(No. 16263.—Appellate Court reversed; superior court affirmed.)
JOHN KINNAN, Plaintiff in Error, vs. THE CHARLES B. HURST COMPANY et al.—(THE GLOBE INDEMNITY COMPANY OF NEW YORK, Defendant in Error.)

*Opinion filed April 24, 1925—Rehearing denied June 5, 1925.*

1. INSURANCE—*when injured employee may maintain creditor's bill against employer's insurer.* An injured employee cannot maintain an action against his employer's liability insurance company where the policy is not for his benefit, but where the insurer fails to defend the employee's action against the employer, which it agreed to do in the policy, a cause of action for such breach arises in favor of the employer, which the injured employee, whose judgment is returned not satisfied, may enforce by a creditor's bill against the insurer, even though the policy provides that the insurer shall be liable to the insured only for money actually paid out in satisfaction of a duly recovered judgment.

2. CONTRACTS—*when an action arises for a breach of contract.* Where one party to a contract repudiates its obligation and declares his intention no longer to be bound by it, the other party may, if he thinks proper, treat the repudiation as a wrongful termination of the contract and bring an action at once, in which he may recover damages as for a present breach.

WRIT OF ERROR to the First Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

S. P. DOUTHART, OSSIAN CAMERON, and EDWARD H. S. MARTIN, for plaintiff in error.

CASSELS, POTTER & BENTLEY, (RALPH F. POTTER, and KENNETH B. HAWKINS, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court for the First District reversed a decree of the superior court of Cook county requiring the Globe Indemnity Company of New York to pay $5966.59

to John Kinnan and awarding execution therefor. The cause was remanded to the superior court with directions to dismiss the bill, and a writ of *certiorari* has been allowed to Kinnan for a review of the record.

The litigation had its origin in an accidental injury which Kinnan received on September 4, 1912, while engaged in the construction of a silo for the Charles B. Hurst Company as a servant of that company, for which he brought suit and recovered a judgment against that company on April 12, 1919, for $12,625 and costs. The Hurst Company was insolvent. Executions issued against it were returned not satisfied and no part of the judgment has been paid. The Globe Indemnity Company had issued a liability policy to the Hurst Company which was in force September 4, 1912, and Kinnan filed his creditor's bill setting forth the foregoing facts, alleging that upon the recovery of his judgment against the Hurst Company, the Globe Indemnity Company by reason of its policy became liable to the Hurst Company for $5000 and interest from the date of the judgment, and praying, among other things, that the debt so due from the Globe Indemnity Company to the Hurst Company be applied to the payment of the judgment against the Hurst Company. The defendant in error, though notified of the accident and the suit, denied that the accident was covered by its policy and refused and failed to defend the suit.

The question on which the case turns is the liability imposed by the policy on the defendant in error, the Globe Indemnity Company. The contention of the defendant in error, as stated in its brief, is, that there can be no recovery against it because it never became indebted to the Hurst Company, the assured; that the policy "was an indemnity contract against loss or damage from liability and until the assured paid the loss or in some manner became damnified no liability under the terms of the policy attached and that the policy was solely for the benefit of the assured and was

not for the benefit of any third party." The following are the provisions of the policy material to this controversy:

"Globe Indemnity Company (herein called the Company) in consideration of the premium herein provided and of the statements forming a part hereof, does hereby agree:

"I. To indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death at any time resulting therefrom, accidentally suffered or alleged to have been suffered during the policy period defined in statement 6, by any employe or employes of the assured, while at the places designated in statement 4, by reason of the work therein described.

"II. To make such investigation of all accidents reported to the Company, and to which this policy applies, and to undertake such negotiations for settlement or to make such settlements of any claims for damages made against the assured, as the Company may deem advisable, and in the event that suit is brought against the assured, to defend such suit, even if groundless, in the name and on behalf of the assured, unless or until the Company shall elect to effect settlement thereof.

"III. To pay all expense of the Company's investigation and adjustment of claim, all costs taxed against the assured in any legal proceeding defended by the Company; and all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the Company's limit of liability as appears in this policy, and

"IV. To pay for such immediate surgical relief as shall be imperative at the time of the accident. The foregoing agreements are subject to the following conditions:

"A. The Company's liability under this policy, whether it be issued in the name of one assured or of more than one assured, shall be limited to the sum of $5,000 on account of bodily injuries to or the death of one employe, and subject to the same limit for each employe the Company's

liability shall be limited to the sum of $10,000 on account of bodily injuries to or the death of more than one employe as the result of one accident, but in addition to these limits the Company will pay all sums for which the Company may be liable under insuring agreements III and IV. * * *

"G. The assured upon the occurrence of an accident, shall give immediate written notice thereof, with the fullest information obtainable at the time, to the home office of the Company or to its duly authorized representative. The assured shall give like notice with full particulars of any claim made on account of such accident. If any suit is brought against the assured to enforce such claim the assured shall immediately forward to the home office of the Company every summons or other process that may be served upon the assured.

"H. The assured shall not voluntarily assume any liability, nor incur any expense other than for immediate surgical relief, nor settle any claim, except at the assured's own cost. The assured shall not interfere in any negotiation for settlement, nor in any legal proceeding, but whenever requested by the Company, the assured shall aid in securing information and evidence and the attendance of witnesses, and shall co-operate with the Company except in a pecuniary way, in all matters which the Company may deem necessary in the defense of any suit or in the prosecution of any appeal.

"I. No action for the indemnity against loss provided for in insuring agreement I of this policy shall lie against the Company, except for reimbursement of the amount of loss actually sustained and paid in money by the assured in full satisfaction of a judgment duly recovered against the assured after trial of the issue, nor unless brought within two years after such judgment shall have been paid. No action to recover under any other insuring agreement shall lie against the Company unless brought within twelve months after the right of action accrues."

The agreement in paragraph I of the policy, "to indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries," etc., together with the condition contained in subdivision I of paragraph IV of the policy, that "no action for the indemnity against loss provided for in insuring agreement I of this policy shall lie against the company, except for reimbursement of the amount of loss actually sustained and paid in money by the assured in full satisfaction of a judgment duly recovered against the assured after trial of the issue," etc., clearly provides only for the reimbursement of money actually paid in satisfaction of a judgment recovered against the assured after the trial of the issue in an action for bodily injuries alleged to have been accidentally suffered within the terms of the policy. (*Davison* v. *Maryland Casualty Co.* 197 Mass. 167; *Connolly* v. *Bolster*, 187 id. 266; *Cushman* v. *Carbondale Fuel Co.* 122 Iowa, 656; *Puget Sound Improvement Co.* v. *Frankfort Ins. Co.* 52 Wash. 124; *Coast Lumber Co.* v. *Ætna Life Ins. Co.* 22 Ida. 264; *Frye* v. *Bath Gas and Electric Co.* 97 Me. 241; *Finley* v. *United States Casualty Co.* 113 Tenn. 592; *Stenbohm* v. *Brown-Corliss Engine Co.* 137 Wis. 564.) The Hurst Company, the assured in the policy, could not maintain an action on this agreement until it had sustained a loss for which a judgment had been recovered and which it had paid. The plaintiff in error had no connection with the policy, which was not issued for his benefit, and could under no circumstances maintain an action on it. (*Connolly* v. *Bolster, supra; Cushman* v. *Carbondale Fuel Co. supra; Finley* v. *United States Casualty Co. supra; Stenbohm* v. *Brown-Corliss Engine Co. supra.*) If, however, the Hurst Company had a cause of action which it could enforce against the defendant in error, whether upon this policy or for some other cause, the plaintiff in error had a right, in equity, to compel the application of the proceeds of such

cause of action to the payment of his judgment against the Hurst Company.

The policy, however, contained other agreements on the part of the defendant in error to which the condition of actual payment in satisfaction of a judgment did not apply. By paragraph II of the policy the defendant in error agreed "to make such investigation of all accidents reported to the Company and to which this policy applies, and to undertake such negotiations for settlement or to make such settlements of any claims for damages made against the assured, as the Company may deem advisable, and in the event that suit is brought against the assured, to defend such suit, even if groundless, in the name and on behalf of the assured, unless or until the Company shall elect to effect settlement thereof." Conditions H and I of paragraph IV prohibited the assured from voluntarily assuming any liability or incurring any expense other than for immediate surgical relief, or for settling any claim except at its own cost, or interfering in any negotiation for settlement or in any legal proceeding except to aid in securing information and evidence and the attendance of witnesses when requested by the company. There was a breach of the defendant in error's undertakings in paragraph II. Suit was brought against the assured for damages for bodily injuries alleged to have been accidentally suffered by an employee of the assured, and this suit, even though groundless, the defendant in error was bound to defend unless and until it chose to settle it. It did not do this, and thereupon the assured defended the suit, with the result which has been stated. What was the effect of this breach of the contract by the defendant in error? It had agreed to indemnify the assured against loss for liability imposed by law upon the assured on account of bodily injuries actually received, only when payment had been actually made by the assured of a judgment recovered against it in an action defended by

the defendant in error. The agreement did not extend to any other judgment, for the defendant in error expressly agreed to investigate all accidents reported to it, and, in case of suit brought, to defend it, even if groundless, unless and until the defendant in error should elect to effect a settlement, while at the same time the assured agreed not to settle any claim or interfere in any negotiation for settlement or legal proceeding. The foundation of the rights of the parties under the contract was the assumption by the defendant in error of the investigation of all accidents, the negotiation of all settlements and the defense of all suits of the character mentioned in the policy, and the exclusion of the assured from all interference in any of these matters except to aid the defendant in error at its request. The refusal of the defendant in error to defend the suit of the plaintiff in error against the assured would have destroyed the foundation of the mutual obligation of the parties. The policy contemplated the payment of a judgment against the assured only in a case defended by the defendant in error, and its refusal to defend therefore deprived the former of its remedy under paragraph I and condition I of the policy, because such refusal prevented a compliance with the condition precedent of the payment of a judgment recovered by the assured after the trial of an action defended by the defendant in error. This repudiation of the fundamental obligation of the contract completely deprived the assured of its benefit and was a waiver of the performance by the assured of the conditions precedent to a recovery of the amount it would be entitled to if those conditions had been performed.

Where one party to a contract repudiates its obligation and declares his intention no longer to be bound by it, the other party may, if he thinks proper, treat the repudiation as a wrongful putting of an end to the contract and bring an action at once, in which he may recover damages as for a present breach. (*Lake Shore and Michigan Southern*

317—17

*Railway Co.* v. *Richards,* 152 Ill. 59.) The defendant in error was bound to defend the action without interference by the assured unless and until it effected the settlement. By its failure to do so it deprived the assured of the remedy provided by the terms of paragraph I and condition I. Had it defended successfully the assured would have been relieved of all liability. Had its defense been unsuccessful the assured would have been able to require the defendant in error to pay it the amount of the judgment to the extent of $5000, with costs and interest. Having deprived the assured of this remedy the defendant in error became liable to the assured for its value,—that is, for the amount which the defendant in error would have been required to pay if it had performed its contract. This was the judgment of the Supreme Court of the United States in *St. Louis Dressed Beef Co.* v. *Maryland Casualty Co.* 201 U. S. 173, which was an action against the casualty company on a liability policy similar in all its provisions material to the case to the policy in this case. The facts in the case were also the same in substance, except that the assured compromised the suits brought against it and paid the damages without a trial or judgment. The Circuit Court of Appeals of the United States certified to the Supreme Court certain questions of law indispensable to the decision of the case upon which it desired the instruction of the Supreme Court. These questions, in short, were:

(1) Did the denial of all liability by the assurer and its refusal to defend the suits constitute such a breach of the contract on its part as released the assured from its agreement not to settle any claim except at its own cost, and from the provision that no action should lie against the assurer unless for loss actually sustained and paid by the assured after a trial of the issue?

(2) Were these provisions waived by the assurer's denial of liability under the policy and its failure and refusal to defend the suits against the assured?

(3) Did the compromise of the suits by the assured after the assurer denied liability and refused to defend them, and the payment of damages by the assured pursuant to the compromise, prevent the assured from recovering against the assurer on the policy on account of the accident?

(4) Was the right of the assurer to insist on the condition of rendition of judgment after trial and its satisfaction by the assured dependent upon the assurer's defense of the action against the assured?

(5) Was the assurer's denial of liability a waiver of the condition respecting the rendition of judgment after trial and its satisfaction by the assured?

(6) Might the liability of the assured to the injured person, and its extent, be liquidated in the first instance in an action between the assured and the assurer, where the latter has denied his liability under the policy and refused to defend an action brought against the assured by the injured person?

In the *Dressed Beef Co. case* the assured was sued and settled with his employee. There was no trial. In this case the assured was sued and notified the assurer, who failed to defend, and the case went to trial and judgment.

The court answered the first, second, fourth and fifth in the affirmative, the third in the negative, and the sixth in the affirmative so far as the question was warranted by the facts set forth. In the opinion it is said in reference to the condition that no action shall lie against the company unless brought by the assured himself to reimburse him for a loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue, "that the only breach which that condition has in view is a refusal by the company to pay after the decision in a case of which it has taken charge, when, notwithstanding the judgment, it conceives itself to have a defense." It is further said: "To limit its (the defendant's) liability as if its only promise was to pay a loss paid upon a judgment is to neglect the

meaning and purpose of the reference to a judgment, and even the words of the promise. The promise in form is to indemnify against loss by certain kinds of liability. The judgment contemplated in the condition is a judgment in a suit defended by the defendant in case it elects not to settle. The substance of the promise is to pay a loss which the plaintiff shall have been compelled to pay, after such precautions and with such safeguards as the defendant may insist upon. It saw fit to insist upon none." This was also the judgment of the Court of Appeals of the State of New York. (*In re Empire Surety Co.* 214 N. Y. 553.) The question arose there in an insolvency proceeding against the surety company as to its liability upon a policy similar to the one in question in this case. It was held that these policies not only afforded insurance against loss, but also carried with them the obligation of the company to defend suits brought against the assured, and that a failure to defend such suits constituted a breach of the contracts, which released the assured from the agreement not to settle claims without the consent of the company and was a waiver of the condition that the company should only be liable after the assured had paid the judgment rendered against him. It was said: "When an accident against the consequences of which the assured is insured has happened, and suit has been commenced against the assured, the insurer, under the terms of the policy, incurred the obligation of assuming the defense of such a suit. When the insurer violated the contract and refused to defend the suit or went into liquidation, thus making it impossible for it to undertake the defense of such suit, it incurred a liability which was not contingent. Where the insurer has failed to perform its contract, and the accident against the consequences of which the assured is insured has happened, the liability of the insurer is certain. In such a case the liability ceased to be contingent, although the amount of the liability may have been unliquidated. The insurer having failed to per-

form its obligation, the amount of the liability would not become fixed until the loss which the assured sustained was determined, but the liability of the insurer would be certain, and not contingent, from the moment that it failed to perform its obligation to defend the suit brought against the assured."

The Hurst Company had a cause of action against the defendant in error for its refusal to defend the suit brought against it by the complainant, the measure of damages in which was the amount recovered against the Hurst Company by the complainant to the extent of $5000, together with interest on that amount from the date of the judgment, and costs. The complainant had a right to have the indebtedness which gave rise to this cause of action applied to the payment of his judgment, not because of any privity between the complainant and defendant in error, but because of the right of any judgment creditor, under such circumstances, to have the property of his judgment debtor applied to the payment of his debts.

The Appellate Court erred in reversing the decree of the superior court, and its judgment will be reversed and the decree of the superior court affirmed.

> *Judgment of Appellate Court reversed.*
> *Decree of superior court affirmed.*

Subsequently, on petition for rehearing, the following additional opinion was filed:

Per CURIAM: The defendant in error has filed a petition for a rehearing on the ground that the bill did not allege a breach by the defendant in error of its contract with the Hurst Company to defend the suit of the plaintiff in error against the Hurst Company. The bill alleged the occurrence of the accident, notice to the defendant in error of the accident and of the plaintiff in error's claim, the bringing of the suit by plaintiff in error against the Hurst Company, negotiation of the defendant in error with him

and its offer of $100 to settle with him, and further alleged that the defendant in error helped the Hurst Company in the defense by procuring and furnishing evidence. The answer admits that the defendant in error had knowledge of the plaintiff in error's suit against the Hurst Company soon after it was begun, and alleged that it informed the Hurst Company that the accident was not covered by the policy, and that the Hurst Company knew that the accident was not covered by the policy and accepted this statement and employed attorneys of its own to defend the suit. The bill contained no allegation that the defendant in error refused to defend the suit, but the answer supplied the missing allegation by its averment that the defendant in error told the Hurst Company that the accident was not covered by the policy and the Hurst Company employed its own lawyers to defend the suit. While the bill was no doubt subject to demurrer, the answer supplied its deficiency, and on the whole record it stands admitted in the pleadings that the defendant in error refused to defend the suit. The parties have assumed that this was the state of the record and have argued the cause on this basis. The plaintiff in error's first proposition, as stated in his brief, was: "When the Globe notified Hurst Company that the accident was not covered by the policy and refused to defend the suit, the Globe not only then presently broke insuring agreement 2 but repudiated its contract, thereby committing an anticipatory breach of the entire policy and excused Hurst Company from any further performance of conditions on its part." The point was presented at length in the argument, with the citation of a number of authorities. The defendant in error made no contention that the pleadings presented no such issue. In its brief it said: "No contention is made at bar that the Globe Indemnity Company took any part in the defense of the suit in the circuit court of Cook county in which John Kinnan recovered his judgment for personal injuries." Again it said: "Moreover,

if the Globe refused to defend a suit or refused to investigate an accident reported to it that was a matter solely between the defendant in error and its assured. The obligation did not run to the benefit of any third party such as Kinnan. No one but the assured could complain if the obligation was not carried out."

The question of the liability of the defendant in error for refusing to defend was recognized by both sides as presented by the record, no suggestion was made of any question of pleading but this question was submitted on the merits without objection. The objection, even if it had been a valid one, cannot be made for the first time on a petition for rehearing.              *Rehearing denied.*