# CHARLESTON.

ANDY RAPTIS *et als., Partners, etc. v.* UNITED STATES FIDELITY & GUARANTY CO.

(No. 6797)

Submitted October 14, 1930. Decided October 21, 1930.
(Rehearing denied December 5, 1930.)

*Crockett & Tucker,* for plaintiff in error.
*Ira J. Partlow,* for defendants in error.

WOODS, JUDGE:

This is an action against the United States Fidelity & Guaranty Company on an indemnity contract to recover damages incurred by the Welch Meat Market in the operation of its truck. The case was tried by the court in lieu of a jury.

Under the policy the insurer had agreed to insure assured against liability for loss and/or expenses, arising or resulting from claims upon the assured for damages in consequence of an accident by reason of ownership, maintenance or use of a certain delivery truck; also, to defend assured against suits for damages, even though groundless, brought on account of such accidents. The insurer denied liability under a provision to the effect that it should not be liable for damage by truck "while being operated by any person * * * under the age of sixteen years." Error is prosecuted by the insurer to a judgment against it in the amount of $2,432.50, which represented $2,000.00 damages, together with interest thereon and costs, assessed against, and $300.00 attorney fees paid by, assured in another action wherein assured was defendant.

According to the agreed statement of facts, Farris had been hired by the Welch Meat Market, a partnership, to operate a delivery truck in the City of Welch. Later a boy under age of sixteen years, by the name of McLain, was employed by Raptis, one of the partners, for the specific purpose of assisting Farris in the delivery of groceries from the truck. On the day of the accident, Farris stopped on his right side of one of the streets in Welch, and a moment later an express truck stopped on the other side, directly opposite, and was left unattended. Farris told the McLain boy, who had already alighted, that he (Farris) would make the delivery at that

place and for him to stay at the truck; that he (Farris) would be gone "quite a while." Automobiles could and did pass between the two trucks, but there was not sufficient interval to permit the passage of the Pocahontas Transportation Company's bus, and motor vehicles of like width. The driver of said bus attempted to pass, and a portion of the bus came into contact with the left rear fender of the grocery truck, and perhaps in contact with a fender of the express truck. Seeing that it was impossible to get through, the driver of the bus brought it to a full stop and blew his horn as a signal to the boy (then in the seat of the grocery truck) to drive the truck forward so as to enable the bus to pass. The boy did not move the truck, or attempt to move it, when the horn of the bus was sounded the first time. The driver sounded the horn a second time as a signal to the boy to move the truck forward, and after this second signal was given, the boy did drive forward, and in so doing, lost control of the truck and ran it against and injured one Womack, who was at the time walking on the sidewalk. Womack recovered a judgment of $2,000.00 against the Welch Meat Market. The insurer refused to defend that action, and now denies liability, on the ground that McLain's action in moving the truck released it from all liability in the premises.

The first question with which we are confronted is, was the car being operated in such a manner as to relieve the insurer from liability? Liability is denied in this Court on the theory that the McLain boy was the agent of the Welch Meat Market, citing *Walker Dry Goods Co. v. Bonding & Insurance Co.*, 90 W. Va. 122. There is nothing in this record to indicate that the lower court sustained the judgment in the Womack case on any such theory. As already shown, McLain was hired by the Welch Meat Market (not by Farris) for the specific purpose of delivering groceries from the truck. In attempting to move the truck, he was not acting within the scope of his employment. He had no more authority to operate it for the meat market than some third person. He was not an agent. *Brightwell v. Simpson,* 106 W. Va. 471.

In *Aetna Casualty & Surety Co. v. Etoch,* 174 Ark. 409, 295 S. W. 376, a case almost identical with the one under con-

sideration, it was held that the insurer was liable under a policy covering a truck, though the policy denied liability if the truck was driven by a person under the age of sixteen years, and the truck was driven at the time of the accident by an eleven year old boy, left in charge but not authorized to drive the truck while the driver was in a building. In that case the court proceeded on the theory that inasmuch as the boy had no authority from the driver or his employer to move the truck, ''the owner of the truck is no more liable to the payment of damages caused by its unauthorized movement, nor the insurance company any less liable to the payment of indemnity therefor, than if the truck had been accidently started by some other car bumping against it and the damage thereby caused; in other words, that, within the meaning of the provisions of the policy, the truck, while standing at the curb until the driver could discharge the necessary duties inside of the building, was being operated by him within the meaning of that clause in the policy.''

In the instant case the truck was under the control of Farris, and within the meaning of the policy was being operated by him. The moving of the truck, and the consequent damage caused thereby, was due to his negligence in leaving it for an unwarranted length of time in a place where he knew, or might have known, it would likely obstruct traffic. The purpose of the policy, as we view it, was, in large part, to indemnify the assured against liability for damage caused by negligence or so found on trial. Under the case made, the insurer is liable by virtue of the policy to the extent of the assured's loss.

The next assignment of error involves the effect of a certain contract entered into between the meat market and Womack after judgment had been rendered in favor of the latter for $2,000.00. This contract recites the payment of $500.00 to Womack together with assignment of all claims against the insurer in consideration of agreement on the part of Womack to release the judgment rendered in his favor against the assured at such time in the future as such suits or actions as may be brought thereunder against said insurer shall have been finally ended and determined, ''the intention hereof being that the parties of the first part (assured) shall not be called upon

to pay any further sum or sums of money by reason of the said judgment.'' It was also expressly agreed that Womack would endeavor to recover attorney fees for the assured.

It is the contention of the insurer that, by reason of the foregoing settlement contract, the actual loss of assured was not $2,432.50, as set out in the judgment, but only $840.80, which amount represents the $500.00 paid to Womack, plus $40.80 costs recovered against, and a $300.00 attorney fee expended by, assured in the Womack case. As we view the contract, Womack has actually relieved the meat market from further liability under his judgment. The indemnity contract, under which the assured is now proceeding, simply indemnifies it against loss. *Kinnan* v. *Charles B. Hurst Co.*, 317 Ill. 251, 148 N. E. 12; *Cushman* v. *Carbondale Fuel Co.*, 122 Iowa 656, 98 N. W. 509; *Stenbom* v. *Brown-Corliss Co.*, 137 Wis. 564, 119 N. W. 308. Womack had no rights thereunder.

We, therefore, modify the judgment of the circuit court by reducing the same to $840.80, with interest from April 8, 1930, the date thereof, and as so modified said judgment is affirmed, with costs in this Court to the meat market.

*Modified and affirmed.*