Lorraine L. Blair, Appellant, v. Continental Assurance Company, Appellee.

Gen. No. 36,168.

Heard in the first division of this court for the first district at the October term, 1932. Opinion filed December 29, 1932.

EKERN & MEYERS, for appellant; LUTHER F. BINKLEY and WILLIAM E. MOONEY, of counsel.

E. V. MITCHELL and CHESTER E. CLEVELAND, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

March 4, 1932, complainant filed her bill against the defendant for an accounting, claiming that defendant had violated the terms of a written contract between the parties. The defendant filed a general and special demurrer to the whole bill and a general and special demurrer to paragraphs 25, 26 and 27 of the bill. The court sustained both demurrers, complainant elected to stand by her bill, a decree was entered dismissing her suit, and she appeals.

The substance of the allegations of the bill, in short compass, is that complainant had been engaged for many years in selling life insurance for a number of companies; that the defendant was a life insurance company engaged in the business of insuring lives of

persons for profit, and that on October 15, 1927, a contract was entered into between the parties whereby defendant appointed complainant its agent for the purpose of writing insurance and delivering policies, and she agreed to devote her entire time, diligence and energies to the prosecution of the business and was given power to appoint subagents subject to the approval of defendant, and for her services was to be paid commissions on the first annual premium collected and on the nine subsequent annual premiums when and if they should be collected; but it was provided that no commission should be paid after the first annual premium unless there was a million dollars of insurance in effect; it was further provided that either party might terminate the contract by giving the other party 30 days' notice in writing, and further that upon the termination of the contract by the defendant (except for certain reasons not involved in this suit) it was agreed the defendant should continue to pay complainant a commission on the nine renewal commissions less a charge of 2½ per cent when the nine premiums were paid; that complainant entered upon her duties and continued until October 19, 1931, when the defendant elected to terminate the contract in so far as it authorized complainant to write insurance. It was further alleged in the bill that complainant, during the time she was carrying out her part of the contract, appointed and qualified more than 250 subagents, who had been approved by the defendant and who had solicited and obtained the issuance by the defendant of about 7,000 policies, "upon which said policies the defendant has received from one to five annual premiums"; that most of the applications for insurance obtained by complainant and her subagents were for insurance under a plan known as the "assured estate plan of the National Bank of the Republic of Chicago," under which plan persons signing applications for in-

surance simultaneously signed an agreement with the bank whereby the applicant agreed to open an account with the bank and to make regular periodic deposits with it, from which the bank was authorized to pay defendant premiums when due; that a written agreement was entered into between the bank and the defendant whereby, in consideration of the bringing of the accounts to the bank it agreed to pay defendant certain compensation, the exact amount of which was unknown to complainant; that under the contract as amended she was entitled to a share of the moneys received by the defendant from the bank; that defendant had received from the bank approximately $50,000 and refused to account to complainant for her portion of it; that complainant, prior to the termination of the contract, had obtained policies aggregating approximately $5,500,000, on account of which defendant has received an annual premium of approximately $140,000 from which the complainant is entitled to receive a certain commission on each renewal premium; that on October 19, 1931, the defendant, in writing, demanded of complainant that she surrender to defendant all the books, papers and documents she had concerning the business, and complainant complied with this demand, as the contract required; that prior to July 25, 1931, complainant was maintaining a large and expensive office for which her monthly expenses were approximately $4,000 exclusive of commissions; that on that date defendant notified complainant not to write any further policies in connection with the Bank of the Republic but to keep her organization intact and defendant would make good to her necessary expenses and reasonable compensation for her services; that relying on this promise, complainant continued to maintain her agents and refrained from writing further insurance, as a result of which she incurred an expense of approximately $10,000, and that her reason-

able compensation would be $1,000 a month during that time.

The bill further alleges that after the payment of the first premium by the persons insured through complainant's efforts, subsequent premiums were paid directly by the parties insured to defendant; that complainant had no record or means of knowing the extent of these payments; that defendant gave her monthly statements but omitted many premium payments paid to defendant.

The substance of paragraphs 25, 26 and 27, to which defendant filed a general and special demurrer is: Par. 25, that after October 19, 1931, when the contract between complainant and defendant was terminated by defendant, as above stated, some eight or ten of complainant's subagents had contracts to sell insurance and had procured a number of applications for insurance on which policies had been issued and on which they were entitled to commissions to be paid by defendant and deducted from complainant's account as soon as the premiums were paid; that defendant had copies of each of the agent's contracts and custody and control of the only books and papers from which it could be ascertained whether the subagents were entitled to commissions, and that the complainant was unable to ascertain these facts; that defendant wholly neglected and refused to pay the commissions to the subagents "although under the terms of said contract with your oratrix it was obliged so to do"; that as a result complainant was sued by one of the subagents and others threatened suit, by reason of which she was compelled to employ counsel and would be compelled to pay out large sums of money for expenses and attorney's fees.

Par. 26, that since October 19, 1931, defendant has induced and permitted 600 or 700 persons to whom complainant and her subagents had sold policies of insur-

ance to surrender the policies and accept other and different policies of insurance in lieu thereof from the defendant at a smaller rate of premium; that the defendant is continuing to solicit and induce and persuade other persons holding policies of insurance which were sold by complainant and her subagents to surrender their policies and take another policy in lieu thereof; "that upon such change of policies said defendant has refused to credit or pay to your oratrix any other or further commissions on the policies so sold by your oratrix, claiming that no premiums have been paid thereon; that all of such conduct has been for the purpose of cheating and defrauding your oratrix of the commissions due her upon the premiums to be paid upon the policies of insurance sold by your oratrix and her subagents."

Par. 27, that by reason of fraud and connivance of the defendant, as above set forth, and divers repudiations and breaches of the contract between complainant and defendant, the commissions due complainant "have now become immediately due and payable"; and therefore the defendant is not entitled to rely upon the provision of the contract making the payment of commissions to her contingent upon the payment of premiums by the policyholders; and that there is due and payable by reason of this fact to complainant from defendant at least $150,000.

The prayer of the bill waived the answer of defendant under oath but further prayed, "That said defendant do discover and set forth to your oratrix under the oath of one or more of its officers, the following information:" then follow five interrogatories.

Complainant contends that under the law a general and special demurrer to an entire bill should be overruled if there is any equity in the bill and argues that in the instant case the bill alleges five separate and distinct grounds for equitable relief, and that since at

least some of them are good, the court erred in sustaining the demurrer to the whole bill. The law is that where a general demurrer is filed to the whole bill and not to a part of it only, and the bill sets up various claims for relief, the demurrer should be overruled if one of the claims is within the jurisdiction and proper for the consideration of a court of equity. *Regan v. Grady,* 343 Ill. 423, 424. This rule of law is not controverted by the defendant, but it contends that since complainant in her bill waived an answer under oath to the whole of her bill, and at the same time called for answer under oath to part of the bill, the demurrer was properly sustained. Other contentions of defendant will be hereinafter stated.

Before section 20 of our Chancery Act, Cahill's St. ch. 22, ¶ 20, was passed, the answer to a bill had to be sworn to. Now, under section 20, the complainant may waive the necessity of the answer being made on oath, except bills for discovery only, and when the answer under oath is waived, it has no other or greater force as evidence than the bill.

Complainant having waived the answer under oath, she could not call on defendant to answer the interrogatories under oath and thus obtain an advantage to which she was not entitled. The interrogatories were no part of the allegations of the bill, but only call for information which would tend to support the allegations. Sustaining the demurrer to this part of the prayer that the interrogatories be answered under oath, was equivalent to striking them from the bill, and the chancellor did not err in this respect.

We hold that it was error to sustain the demurrer to the whole bill, because complainant alleged that during the time she was working under the contract between the parties she had procured approximately 7,000 policies of insurance to be issued by the defendant on applications obtained through her efforts, and

that defendant had received from one to five annual premiums on the policies, and that she and her sub-agents were entitled to commissions on these premiums, which had been paid to defendant, but which she had not received.

Other moneys claimed by complainant to be due her under the contract are for the unpaid commissions covering a period of nine years after the first premium was paid on policies obtained through complainant's efforts and written by defendant, and which defendant later induced about 700 policyholders to exchange for other policies, for which a less premium was paid. Defendant having breached the contract so far as the 700 policies were concerned, complainant could maintain her suit. *Newcomb v. Imperial Life Ins. Co.,* 51 Fed. 725; *Kinnan v. Charles B. Hurst Co.,* 317 Ill. 251. We also hold that complainant stated equitable grounds for relief in reference to the business done through the National Bank of the Republic and for the office expenses, etc., incurred by her as above referred to.

A further contention made by complainant is that she is entitled to recover a percentage of the estimated value of all future premiums on the policies procured through her efforts, other than the 700 policies, for the remaining nine years, because the defendant had repudiated the contract, and that the law does not require that she wait until the expiration of the time when the premiums are paid or whether they are paid or not. We think this contention cannot be sustained. There is no allegation in the bill that defendant refused to pay complainant her commissions on premiums on policies other than the 700 when and if they are collected by defendant. In the absence of such allegation we must presume that defendant will carry out the terms of the contract.

574

The contention of defendant that complainant has an adequate remedy at law and therefore a court of equity has no jurisdiction, we think untenable. The accounting which complainant seeks consists of many items of varying percentages which we think a jury would be unable to comprehend, and that the remedy at law would not be as full, complete and adequate as in chancery. In these circumstances equity has jurisdiction.

For the reasons stated, the decree of the circuit court of Cook county dismissing the bill for want of equity is reversed and the cause is remanded with directions to sustain the demurrer to that part of the prayer calling for answers to the interrogatories under oath, and to that part of the bill by which complainant seeks to recover all future commissions on all policies other than the 700 policies above mentioned, and to overrule the demurrer in all other respects.

*Reversed and remanded with directions.*

McSurely, P. J., and Matchett, J., concur.