# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01659-SCT

*ASSOCIATION OF TRIAL
LAWYERS ASSURANCE,
A MUTUAL RISK RETENTION GROUP*

*v.*

*MARTIN TSAI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/30/2002 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT C. GALLOWAY |
| | ERIN M. McCLOSKEY |
| | RONALD L. OHREN |
| ATTORNEY FOR APPELLEE: | WILLIAM CARL MILLER |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL - 08/05/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Martin Tsai, a judgment creditor of Woodrow Cook, sought to garnish an insurance policy issued to Cook by the Association of Trial Lawyers Assurance ("ATLA"). In its defense, ATLA contended that, because the policy was an indemnity policy, it did not have the duty to defend Cook in the garnishment action and that a prior arbitration proceeding between it and Cook was binding. Tsai argued that, because the policy provided that ATLA

had a duty to defend Cook, ATLA breached the contract, and, therefore, it was estopped from raising any defense concerning coverage.

¶2. The arbitrator agreed with ATLA and determined that the policy did not afford coverage. The circuit court reversed the arbitrator's findings, held that the policy did contain a duty to defend and that ATLA breached that duty, and entered judgment in favor of Tsai. Both parties appeal. We find that, applying Illinois law and under the policy provisions, ATLA had a duty to defend and a duty to indemnify. We affirm.

### FACTS

¶3. Martin Tsai filed suit against Viceroy Tai USA, Inc.,[1] and Woodrow Daniel Cook, alleging that (1) while Cook was an associate attorney in the law firm Page, Mannino, Dickenson & McDermott ("Page Mannino"), Cook represented Tsai in the contract for the sale and purchase of the Pine Island Golf Course, in Ocean Springs, Mississippi; (2) Cook encouraged him to pursue the purchase of the golf course and to secure financing for the transaction through Southtrust Bank; (3) Through his representation of Tsai, Cook gained special knowledge of Tsai's finances; (4) Cook continued to assure Tsai that Southtrust would grant the loan, prompting Tsai to invest more funds into the project; (5) The deal never finalized because Southtrust refused to go forward with the loan; (6) Cook breached his duty to act solely for Tsai's interest and not to disclose Tsai's confidences to third parties; (7) Cook used his special knowledge of Tsai's financial situation and (a) told Southtrust that Tsai was involved in a dispute concerning other properties purchased by Tsai and disputes

---

[1]Viceroy has been dismissed from this action and is not a party to this appeal.

involving the operation of other golf courses; (b) informed Viceroy of Tsai's financial problems and Viceroy then used that information against Tsai's interest; and (c) represented Viceroy against Tsai's interest; and (8) Cook's conduct continued after he left Page Mannino and joined Beard, Raines and Cook.

¶4.     Cook notified his insurer, ATLA, of the Tsai lawsuit on November 22, 1996. ATLA sent a reservation of rights letter to Cook on March 5, 1997, reserving its right to deny coverage as well as its right to seek arbitration. ATLA noted that the policy had a retroactive date exclusion of January 31, 1996. On March 5, 1997, ATLA sent a detailed reservation of rights letter to Cook, once again reserving its rights as to the retroactive date policy exclusion and its right to seek arbitration pursuant to the policy.

¶5.     Almost two years later, based in part on the policy's retroactive date exclusion, ATLA declined coverage for the Tsai lawsuit. ATLA once again reserved its right to seek arbitration.

¶6.     The parties settled. Page Mannino paid Tsai $350,000, and Tsai and Cook entered into an settlement agreement wherein Cook's claims against ATLA were assigned to Tsai. Tsai and Cook also stipulated to the entry of a consent judgment in the amount of $1,000,000 and agreed that the judgment would not be enrolled.

¶7.     After Tsai served ATLA with a writ of garnishment based on the consent judgment, ATLA demanded arbitration with Cook. Although he was notified of the arbitration proceedings, Cook did not participate in the arbitration proceedings. The arbitrator ruled that the policy afforded no coverage for Tsai's lawsuit.

3

¶8.     After a bench trial, the circuit court held that the substantive issues were to be determined applying Illinois law, but that the procedural issues of the garnishment actions were controlled by Mississippi law.  It noted that the burden of proving that the garnishee is liable is on the plaintiff and that the case turned on three issues:  whether ATLA had a duty to defend, whether it breached that duty, and whether it is estopped from asserting a policy defense.

¶9.     The circuit court found the policy language[2] to be ambiguous:

> While the policy states in section IV(6)(e) that it does not have a right or duty to defend a suit against its insured, after that initial statement, all language lends itself to ATLA's virtually complete control of all aspects of the defense.  The insured under this policy is at ATLA's mercy as to their choice of defense counsel and the overall management of the defense.

The circuit court stated that the "ambiguity is rightfully resolved in favor of the insured, thus placing a definite duty to defend upon ATLA," and concluded that ATLA had breached its

---

[2]Section IV(6)(e) provides as follows:

The Company shall not have the right nor shall it be called upon to assume charge of the defense of any claim made or suit brought or proceeding instituted against an INSURED, but the INSURED shall act in good faith in defending against any such claim, suit or proceeding, keeping the Company fully informed as to the conduct of such defense.  In addition, the Company shall have the right and be given the opportunity to approve in advance counsel selected by the INSURED to defend in any such claim, suit or proceeding and to require the INSURED to revoke such counsel's appointment.  In considering whether counsel selected by the INSURED should be approved, or whether such approval should be revoked, the Company may take into account all factors which it deems to be relevant, including counsel's projected and actual fees and whether counsel has been cooperative in keeping the Company fully informed with respect to the claim in question or other claims. . . .

duty when it initially defended the suit under a reservation of rights and when it dropped the defense two years into the litigation without having a judicial determination of its coverage issues.

¶10. The circuit court found that the amount of the settlement ($1,000,000) was reasonable in light of the allegations in part because ATLA offered no evidence that would challenge or refute the judgment's reasonableness.

¶11. Finally, the circuit court set off the $350,000 paid by Page Mannino and the defense costs advanced by ATLA ($28,179.57), bringing the total amount of the judgment to $621,820.43. Aggrieved by the circuit court's judgment, both ATLA and Tsai appeal.

## STANDARD OF REVIEW

¶12. A circuit judge sitting without a jury is accorded the same deference with regard to his findings of fact as a chancellor, and his findings are safe on appeal if they are supported by substantial, credible, and reasonable evidence. *Maldonaldo v. Kelly*, 768 So. 2d 906, 908 (Miss. 2000). Questions of law are reviewed de novo. *Consolidated Pipe & Supply Co. v. Colter*, 735 So. 2d 958, 961 (Miss. 1999).

## APPLICABLE LAW

¶13. We agree with the circuit court that this case is governed by Illinois substantive law and Mississippi procedural law because the insurance policy in question was issued in Illinois, and this case involves questions of interpretation of the policy. *See Boardman v. United Services Auto. Ass'n,* 470 So. 2d 1024, 1034 (Miss. 1985).

## DISCUSSION

5

**WHETHER TSAI WAS BOUND BY THE ARBITRATOR'S DETERMINATION THAT THE ATLA POLICY AFFORDED NO COVERAGE TO COOK WITH RESPECT TO THE TSAI LAWSUIT.**

¶14.   ATLA first argues that Tsai was a judgment creditor and had only the same rights that Cook had. As a general rule, "the rights of a judgment creditor to recover from a garnishee depend upon the subsisting rights between the judgment debtor and the garnishee, and a garnishee's liability to the judgment creditor is measured by the former's liability to the defendant." 30 Am. Jur. 2d *Executions and Enforcement of Judgment* § 653, at 429 (2000). A judgment creditor's rights are derived from and no greater than the insured's rights, and if the insured did not comply with the terms of the policy the judgment creditor had no rights to the policy. *Courtney v. Stapp*, 232 Miss. 752, 758, 100 So. 2d 606, 608 (1958); *see also Parker v. Standard S.S. Owner's Protection & Indemnity Ass'n Ltd.*, 1993 WL 557902 * 3 (N.D. Miss. 1993) (assignee takes it with whatever limitations it had in the hands of the assignor); *Schuler v. Murphy*, 91 Miss. 518, 44 So. 810 (1907) (judgment creditor stands in the same position as the judgment debtor). We therefore agree with ATLA that Tsai did not have any rights greater than those afforded to Cook.

¶15.   ATLA contends that Tsai was equitably estopped from pursuing his garnishment claims against ATLA because Tsai was bound by arbitration which began and ended unfavorably for Tsai some twenty months after ATLA's declination of coverage and only after ATLA had received a writ of garnishment.   Under Illinois law, the insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract. *Chandler v. Doherty*, 702 N.E.2d 634 (Ill.

6

App. Ct. 1998) (citing ***Kinnan v. Charles B. Hurst Co.***, 317 Ill. 251, 257, 148 N.E. 12 (1925)). Additionally, it is well-settled that an insured contracts for and has a right to expect two separate and distinct duties from an insurer: (1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found legally liable for the occurrence of the covered risk. ***Chandler,*** 702 N.E.2d at 637 (citing ***Conway v. Country Cas. Ins. Co.***, 442 N.E.2d 245, 247 (Ill. 1982)). In this context, a liability insurer's breach of its duty to defend and unjustifiable refusal to do so combined with its failure to file a declaratory action to determine its obligations before trial of the original tort action precludes the insurer from asserting a policy defense. ***Id.*** at 639 (citing ***Murphy v. Urso***, 430 N.E.2d 1079, 1082 (Ill. 1981) & ***Thornton v. Paul***, 384 N.E.2d 335, 340 (Ill. 1978)). The Supreme Court of Illinois has held that the aforementioned rule is likewise applicable where the insurer's duty is to indemnify. ***Waste Management, Inc. v. Int'l Surplus Line Ins. Co.***, 579 N.E.2d 322, 335 (Ill. 1991). Thus, whether Tsai is bound by the arbitration ruling depends on whether a duty to defend existed.

¶16. Any doubts about potential coverage and the duty to defend are to be resolved in favor of the insured. ***Chandler***, 702 N.E.2d at 638 (citing ***West Bend Mut. Ins. Co. v. Sundance Homes, Inc.***, 606 N.E.2d 326, 328 (Ill. 1992)). Additionally, if an insurance policy is clear and unambiguous, a trial court should apply its provisions as written. ***Am. States Ins. Co. v. Action Fire Equip., Inc.***, 509 N.E.2d 1097 (Ill. App. Ct. 1987). A court should give effect to the intent of the parties as expressed in the contract using the plain and ordinary meaning of the words in the policy. ***Weeks v. Aetna Ins. Co.***, 501 N.E.2d 349, 352 (Ill. App. Ct. 1986). A policy provision is ambiguous only if it is subject to more than one

7

reasonable interpretation. ***United States Fid. & Guar. Co. v. Wilkin Insulation Co.***, 578 N.E.2d 926 (Ill. 1991). A liability insurer's duty to defend arises when the insured tenders defense of a suit against him that alleges facts which, when taken as true, raise the potential for coverage occurring during the effective policy period. ***Chandler***, 702 N.E.2d at 638 (citing ***West Bend Mut. Ins. Co. v. Sundance Homes, Inc.***, 606 N.E.2d at 328). It is the law of the State of Illinois that in determining whether it has a duty to defend a suit, an insurer is limited to comparing the bare allegations of the complaint with the face of the policy of insurance. ***Id.***

¶17.   Where an insurer has a duty to defend, it has the right to assume control of the litigation. The standard duty to defend policy is one in which the insurer selects counsel and assumes control of the defense, paying all fees and costs directly. ***Goodheart-Willcox Co. v. First Nat'l Ins. Co. of Am., Inc.***, 2001 WL 501194 (N.D. Ill. 2001). Although ATLA argues that the policy did not contain a duty to defend and expressly disavowed any duty to defend, the language in the clause was so oppressive, ambiguous, and contradictory that it bordered on the unconscionable if enforced according to ATLA's liking. It is reasonable to infer that the applicable clause was a blatant attempt by ATLA to disclaim a duty to defend while retaining all control over any claims brought. This attempt by ATLA created the ambiguity referred to by the circuit court.

¶18.   The clause which ATLA contends constitutes an express disavowal of the duty to defend confers the following rights on ATLA: (1) advance approval of counsel; (2) the right to fire the insured's counsel; (3) the right to be fully informed of said defense; (4) the unconditional right to direct, approve, or withhold approval of any settlements; and (5) the

right "to select counsel to defend in such claim, suit or proceeding" where the insured has failed to defend or select counsel approved or directed by the Company. In essence, ATLA has drafted clauses expressly disavowing a duty to defend while still retaining the right to defend as it pleases where it does not approve of the insured's choice of counsel, handling of the defense, or after it has amassed enough information to satisfy itself that it is in its best interest to deny a claim. ATLA seemingly contradicts itself by asserting that an insurer has a duty to defend where it has the right to control the litigation but then claiming that the substantial rights afforded ATLA and the specific language allowing them to "defend in such claim, suit, or proceeding" in the aforementioned clause does not give rise to a duty to defend or amount to a near total control of the defense by ATLA. ATLA did in fact approve counsel, made its reservations of rights, and paid all the fees and costs of the defense directly. The ambiguity of this clause enabled the ATLA to act as defender at whim. ATLA wanted the benefit of defending the case according to its liking when it suited its interests but also wanted to disclaim a duty to defend when it decided to go forward with arbitration after it was presented with a writ of garnishment without ever seeking a declaratory judgment or requesting a stay of the case pending arbitration. By its drafting of the policy and its actions subsequent to the presentment of a writ of garnishment, ATLA wanted to have its proverbial cake and eat it too.

¶19. After timely notice of the claim from Cook on November 22, 1996, ATLA's counsel responded with a letter dated December 11, 1996, in which Cook was advised that no coverage determination had yet been made. ATLA counsel requested additional information to develop his coverage opinion. Notwithstanding this letter, ATLA assumed the defense

9

of the case on March 5, 1997, reserving its rights to contest coverage and setting forth specific policy provisions which it contended could result in a denial of coverage. Nearly two years after it had assumed the duty of paying for Cook's defense costs, ATLA denied coverage and abandoned its insured. Once ATLA assumed the defense of the case, it did not do what Illinois law commanded it to do; that is, either: (1) defend the case until its conclusion, reserving its right to contest its duty to pay any potential judgment or settlement; or (2) file a declaratory judgment action wherein it could have sought relief from the burdens of its obligations to Cook. *State Farm Fire & Cas. Co. v. Martin*, 710 N.E.2d 1228, 1231 (Ill. 1999) (quoting *Clemmons v. Travelers Ins. Co.*, 430 N.E.2d 1104, 1107 (Ill. 1981)). It is the thus clear, under Illinois law, the insurer cannot simply abandon its insured. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999). Even where no duty to defend is found, ATLA's duty to indemnify remained and also required the insurer to file a declaratory judgment action wherein it could have sought relief from the burdens of its obligations to Cook. ATLA did not do this nor did it ask for a stay of Tsai's action pending arbitration. ATLA retained control over nearly every aspect of Cook's defense, even retaining the right "to defend in such claim, suit, or proceeding," paid all costs of the defense, made reservations of rights, remained intimately involved in the litigation until enough information was gathered to deny coverage, and then denied coverage at its own behest without seeking approval of this determination by a court of law as required whether they had a duty to defend or a duty to indemnify. Accordingly, Illinois law precludes ATLA from asserting a policy defense such as an arbitration clause where it has failed to either defend the action to its conclusion or seek a declaratory judgment. Finally,

10

when the circuit court approved the writ of garnishment against ATLA, the company did an end-run around the court's authority by initiating arbitration two years after declining coverage then attempted to make it binding on Tsai because Tsai "stands in the shoes" of Cook. Indeed, Tsai "stands in the shoes" of Cook and as such Cook's claims that ATLA had a duty to defend or at least a duty to indemnify, breached its duties, and should be estopped from asserting a policy defense may be imputed to Tsai.

¶20. Given the facts of this case, ATLA had a duty to defend, and at the very least had a duty to indemnify, and therefore was required to: (1) defend the case to conclusion, reserving its right to contest its duty to pay potential judgments or settlements; or (2) file a declaratory judgment wherein it could have sought relief from the burdens of its obligations to Cook. Because ATLA failed to do so, it is now estopped from arguing that the arbitration decision is binding.

¶21. Because this issue is dispositive, we will not address the other issues raised by ATLA in its direct appeal and by Tsai in his cross-appeal.

## CONCLUSION

¶22. We find that ATLA had a duty to defend and a duty to indemnify. We therefore affirm the judgment of the Jackson County Circuit Court.

¶23. **AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL.**

**SMITH, C.J., COBB, P.J., CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, DICKINSON AND RANDOLPH, JJ., NOT PARTICIPATING.**

11