**Dale Sell and Joe Webb, Plaintiffs-Appellees, v. Country Mutual Insurance Company, Defendant-Appellant.**

**Gen. No. 10,272.**

Third District.
January 13, 1960.
Released for publication January 29, 1960.

J. E. Horsley and J. E. Gambill, of Craig and Craig, of Mattoon, for defendant.

Kenneth A. Green, of Mattoon, for plaintiffs-appellees.

JUDGE CARROLL delivered the opinion of the court.

The defendant insurance company issued a policy on plaintiffs' 1956 homemade, used 14 ton dump bed trailer. Coverage thereunder included protection subject to certain exclusions against accidental upset as specified in Paragraph 3 of the policy which reads as follows:

"Paragraph 3. ACCIDENTAL COLLISION OR ACCIDENTAL UPSET, including accidental breakage of any plate glass permanently attached to, and forming a part of the structure of the trailer described herein (excluding, however, all loss or damage by fire

from any cause whatever and all loss or damage to any tire due to puncture, cut, gash, blowout, and other ordinary tire trouble.) The Company's liability under this paragraph shall not exceed eighty percentum (80%) of the actual cash value of the property at the time of loss and shall be limited to eighty percentum (80%) of the actual cost of the suitable repair of the property damaged."

One of the conditions of the policy was "that the company shall not be liable under Paragraph 3 for damages to trailer described herein caused by any livestock or other property carried in or upon said trailer."

While in the process of dumping a load of sand, the trailer overturned or became upset and was damaged. This action was brought to recover the cost of having the trailer repaired. A jury trial resulted in a verdict and judgment for plaintiffs from which defendant appeals.

Joe Webb, one of the plaintiffs, testified that on the date of the occurrence, he was using the trailer to haul sand from a quarry to the premises of Tuscola Chemical Corporation in Tuscola, Illinois; that prior to the occurrence he had made two trips; that the weight of his load on the first trip was 12 tons and 200 pounds, and that on the second trip it was 11 tons and 800 pounds; that at the Chemical Corporation premises a spotter on the ground indicated the point where the sand was to be unloaded; that when Webb had backed the trailer to such point, he would pull a handle which opened the trailer tail gate and by operating a device in the cab of the tractor he elevated the dump bed of the trailer and the sand would run out; that on the occasion of the first two trips the unloading was accomplished without incident; that on the third trip the trailer carried 12 tons of sand; that in preparing to dump the third load he proceeded in the same manner as he did on the two previous trips; that while he was

499

raising the dump bed and after the sand had started to move, the trailer started to turn over on its right side; that he turned off the motor and jumped out of the cab; that he then observed that under the right wheel the ground was lower than it was under the left wheel; that in his words "I believe the wheels sunk to the right on account I felt the truck go that way, but the truck was already turning when I felt it."

The only other witness who was present when the trailer turned over, was Walter Spaugh, Jr., the spotter who directed Webb in backing the truck to the unloading site. He testified that when the dump bed had raised about ¾ of the way up, he shouted: "Joe, she's turning over"; that as the sand started coming out of the dump bed the truck started turning over; that at the time of the upset, the bed was in the process of being raised; that after the upset, there remained in the bed a yard and a half of sand out of approximately 6½ or 7 yards.

The record contains a substantial amount of evidence showing the condition of both the trailer and tractor following the upset. In view of the conclusion reached, we regard any detailing of such evidence as being unnecessary.

Defendant insists that plaintiff failed as a matter of law to prove that the occurrence resulting in the loss for which recovery is sought was not excluded from coverage by the provisions and conditions of the policy upon which the action is based and that the trial court erred in refusing to direct a verdict in its favor.

█ The rule that an insured cannot recover upon a policy of insurance in the absence of proof that the loss claimed comes within the terms of such policy is so well established as to require no citation of authority. In determining whether plaintiffs' evidence met the burden imposed upon them by such rule, consideration will initially be given to the language of the

policy specifying the coverage afforded plaintiffs and also of the exclusion clause which defendant claims exempts it from liability.

■ We agree with defendant that the terms of the provisions under consideration are unambiguous. In such situation they will be taken and understood according to their plain, ordinary and popular sense. Craig v. Central Nat. Life Ins. Co., 16 Ill.App.2d 344; Rubenstein v. Fireman's Fund Ins. Co., 339 Ill. App. 404.

In Paragraph 3 of the policy it is plainly stated that plaintiffs are insured against accidental upset of their trailer including accidental breakage. In equally plain language the policy provides that defendant company shall not be liable under Paragraph 3 for damages:

"(1) To any tire, unless caused in an accidental collision which also causes sufficient other loss or damage to the insured trailer to entitle the Insured to payments under said Paragraph 3.

"(2) To trailer described herein, caused by any live stock or other property carried in or upon said trailer.

"(3) To trailer described herein, caused by any other trailer, farm vehicle, farm machinery, or standard vehicle being towed or propelled behind said trailer."

■ It should be here noted that the language of Paragraph 3 which is the insuring clause places no limitation on the cause of accidental upset. The defendant thereby insured plaintiffs against loss by accidental upset regardless of what may have occurred by way of cause prior to the actual upset or overturning of the trailer. Proof that the load of sand unbalanced the trailer and it overturned as a result thereof would not constitute a defense to plaintiffs' action. Walter E. Heller & Co., Inc., for Use of Ken-

501

nedy v. International Indemnity Co., 238 Ill. App. 361; Fidelity & Casualty Co. of N. Y. v. Morrison, 129 Ill. App. 360.

We think under the terms of the policy plaintiffs, in order to bring themselves within the coverage thereby afforded, were required only to show that the truck was accidentally upset.

The exclusion clause must be taken to mean exactly what it says which is that the company's liability for accidental upset or accidental collision does not extend to certain damages to the trailer occurring as therein described. It specifies the particular damages for which the company will not be liable, which include those caused by livestock or other property carried in or on the trailer. Obviously these specified items are excluded because they would not be the result of an accidental upset. As applied to plaintiffs' situation it could have no meaning other than that the defendant would not be liable for any damage to the trailer caused by the load of sand being carried thereon.

We find nothing in the exclusion clause indicating the intention of the parties to thereby modify or restrict the meaning of the words "accidental upset" found in Paragraph 3. Such exclusion clause deals not with the question as to what constitutes an accidental upset but with three specific types of damages for which the insurer cannot be held liable under Paragraph 3. Obviously, it cannot be construed as having the effect of denying plaintiffs' coverage under the policy if in fact their trailer was damaged by accidental upset and their claim is only for the loss attributable to such upset.

Plaintiffs allege in their complaint that while the trailer was being used for the purpose of hauling sand, it was accidentally upset and greatly damaged. No claim is made for damages to the trailer other than those resulting from the upset.

■ ■ Defendant's contention that the trial court should have directed a verdict in its favor raises only a question of law as to whether there is in the record any evidence, which standing alone and taken to be true together with all reasonable inferences most favorable to the plaintiffs to be drawn therefrom, which fairly tends to support the jury's verdict. Lindroth v. Walgreen Co., 407 Ill. 121; Seeds v. Chicago Transit Authority, 409 Ill. 566. When the evidence in this record is considered with due regard for the requirements of the above rule, it discloses that while in the process of dumping a load of sand the trailer turned over on its right side and came to rest lying flat with all its wheels off the ground; that just prior to the upset the trailer had hauled two loads of sand to the site of the occurrence and on both occasions the unloading was accomplished without incident; that while the two witnesses to the actual occurrence described the manner in which the trailer overturned, neither furnished any facts which reasonably supports the conclusion that such upset was not accidental. We think this evidence fairly tends to prove that the overturning of the trailer was an unusual and unexpected occurrence and under the circumstances it was accidental and therefore covered by the policy.

For the reasons indicated, we are of the opinion that in submitting the case to the jury, the trial court did not err and its judgment is affirmed.

Affirmed.

REYNOLDS, P. J. and ROETH, J., concur.