*In re* ESTATE OF DANIEL F. RICE *et al.*, Deceased (Charles D. Donaldson *et al.*, Ex'rs of the Estate of and Trustees under the Will of Daniel F. Rice, Appellants, v. Continental Illinois National Bank and Trust Company of Chicago, Co-Ex'r of Ada L. Rice Estate and Successor Trustee of Trusts under the Will of Daniel F. Rice, *et al.*, Appellees.)

Second District   Nos. 83—819, 83—825 cons.

Opinion filed February 1, 1985.

Jack Osswald, Daniel V. Kinsella, and Robert C. Stephens, all of Howington, Elworth, Osswald & Hough, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield, Louis G. Davidson, John B. Davidson and Robert L. Reifenberg, all of Louis G. Davidson & Associates, Ltd., Charles J. O'Laughlin, Barry Sullivan, and Cynthia G. Shoenberger, all of Jenner & Block, Don H. Reuben and Theodore J. Low, both of Reuben & Proctor, all of Chicago, and Hartman E. Stime, of Peregrine, Stime, Newman & Ritzman, of Wheaton (Paul M. Goldman, Christine H. Rosso, and Floyd D. Perkins, Assistant Attorneys General, and Matthias Lydon, Special Assistant Attorney General, all of Chicago, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Charles D. Donaldson, Victor A. Grossi, Walter L. Palka, and Philip A. Rashman, executors of the estate and trustees under the will of Daniel F. Rice, deceased, and hereinafter referred to as the executors, appeal from three orders of the trial court whereby, in an attempt to enforce a settlement agreement, the trial court ordered the executors to turn over the trust and remaining estate assets to the successor trustee, Continental Bank, reformed releases executed by Daniel F. Rice, Jr., and his wife, Mary L. Rice (hereinafter Rices, Jr.)

to comport with the parties' apparent intent, dismissed the executors' petition seeking damages and fees from Continental Bank for alleged negligence in preparing release forms and in exchanging funds and documents with the Rices, Jr., and denied the executors' motion for reconsideration.

The executors' principal contentions on appeal are that (1) the trial court lacked jurisdiction to enter the orders of August 4, September 8, and September 15, 1983; (2) the judicial reformation of the releases executed by the Rices, Jr., did not give the executors the benefit of their bargain; (3) the Rices, Jr., should have been compelled to execute and deliver appropriate releases and receipts; (4) the trial court erred by ordering the executors to turn over trust and estate assets before conditions precedent were met; (5) it was error to dismiss the executors' petition against Continental Bank for relief and damages, including corporate indemnification; and (6) the executors were denied due process of law by the trial court's actions and orders of August 4, September 8, and September 15.

Following the deaths of Daniel F. Rice in 1975 and Ada L. Rice in 1977, the various beneficiaries under their wills and executors of their estates commenced actions in Federal court and the courts of this State and sister States. As this is the fourth opinion issued by this court resulting from the protracted litigation ensuing from the probate of these estates, we refrain from reiterating the extensive history of this case, since it can be garnered from our prior decisions. See *In re Estate of Rice* (1982), 108 Ill. App. 3d 751, 439 N.E.2d 1264; *In re Estate of Rice* (1981), 96 Ill. App. 3d 1137, 421 N.E.2d 1034; and *In re Estates of Rice* (1979), 77 Ill. App. 3d 641, 396 N.E.2d 298.

After the trial court's entry of settlement orders, reflecting the oral agreement of the parties, was affirmed by this court in *In re Estate of Rice* (1982), 108 Ill. App. 3d 751, 439 N.E.2d 1264, the parties entered into another agreement, referred to as the February 28, 1983, agreement, which incorporated the earlier settlement orders and provided, *inter alia*, that the parties would dismiss appeals pending in the Illinois Supreme Court; that the Rice Foundation, Continental Bank, and Arthur Nolan, Jr., would file releases required under the earlier settlement orders; that the trust beneficiaries and the successor trustee would execute and deliver receipts to the executors; that the parties would execute and deliver general releases to the executors; and that certain trust beneficiaries, including the Rices, Jr., would execute and deliver an indemnification agreement to the executors.

Under the order subsequently entered by the trial court pursuant to the February 28 agreement, the executors were discharged from all duties, obligations, liabilities and responsibilities arising directly or indirectly from any act taken or omission to act by them or any of them during and concerning the administration, funding, and distribution of the trusts; the court accepted the resignation of the executors and appointed Continental Bank as successor trustee; the successor trustee was directed to indemnify and hold harmless, to the extent of the trust assets, the executors; title to trust assets was vested in the successor trustee; and the executors were ordered to immediately execute and deliver all instruments and do all acts necessary to perfect title of all assets of the trust in the successor trustee.

On April 7, 1983, the Illinois Supreme Court continued the motions to dismiss the consolidated appeals. It remanded the cause to the circuit court for consideration of the proposed settlement in its entirety, directing that court to file a report to the supreme court on or before May 16, 1983, of the final disposition of the proposed settlement, and retained jurisdiction of the pending appeals.

After further negotiations and hearings, a "global settlement" was reached by the parties on May 11, 1983. At a hearing held on that date, the executors asked what date was to be on the releases. Counsel for the Rices, Jr., Mr. John Davidson, answered, "Today's date, the 11th of May." The following colloquy was held:

"MR. OSSWALD [counsel for the executors]: We would assume, therefore, that those releases are being current dated through this date and we also assume, our executors have assumed that the releases referred to in these orders are being as of—through this date.

THE COURT: May 11th.

MR. JOHN DAVIDSON: That appears both on Page 1 in about the seventh line, and on Page 3 in the third line.

MR. HULL [counsel for the estate of Ada L. Rice]: It's the 11th day of May you want inserted?

MR. JOHN DAVIDSON: That's right."

The trial court entered the written agreed order on May 11, 1983, approved by all parties, which provided, *inter alia*, that the parties would move for the dismissal, with prejudice, of all pending appeals; that all parties to those appeals would execute and file a counterpart of the February 28 agreement provided that the undertakings and indemnities would not affect any trust in which the Rices, Jr., had an interest and would not require payment or repayment of any sums received or to be received by the Rices, Jr., under the wills of Daniel F.

and Ada L. Rice; that the Rices, Jr., would forthwith deliver to Continental Bank an executed counterpart of the February 28 agreement, agreed orders to dismiss certain matters, mutual and general releases in the form attached, and an original counterpart of the attached agreement by which Continental Bank would terminate the trust established by the codicil of the will of Ada L. Rice and distribute $360,000 of the principal to the joint order of the Rices, Jr. and their counsel simultaneously with the Rices, Jr.'s delivery of the aforementioned documents; that all parties listed would execute and file mutual and general releases; and that to the extent there was any inconsistency between the February 28 agreement and that May 11, 1983, order, the May 11, 1983, order would govern and control. The trial court specifically retained jurisdiction over the parties and subject matter for the purpose of enforcing the order.

Continental Bank, the Rice Foundation, and the Rices, Jr., exchanged the documents and funds on May 16, 1983. On the following day, the trial court issued a letter, along with copies of orders entered, to the chief justice of the Illinois Supreme Court, stating that the documents and funds were transferred and that all matters were resolved to everyone's satisfaction. However, it was later discovered that in the release documents the executors had been released from possible liability only through May 5, 1983, rather than through May 11, 1983. Also, the Rices, Jr.'s releases bore an incorrect attestation clause and the receipt executed by the Rices, Jr., carried a disclaimer of an agreement as to the accuracy of any accounts rendered after May 11, 1983. Corrected releases were obtained from all parties except the Rices, Jr., who persisted in refusing to sign a corrected release through May 11, 1983.

In July 1983, the Illinois Attorney General petitioned the Illinois Supreme Court for a rule to show cause why the Rices, Jr., and their counsel should not be held in contempt for the failure to execute proper releases. The Rice Foundation filed, in the circuit court, apparently in late July, a petition for rule to show cause why the executors should not be held in contempt for failure to turn over the trust assets.

At a status hearing on July 27, 1983, the executors complained that the Rices, Jr., had not complied with the May 11, 1983, order in that they executed releases dated May 5, 1983, instead of May 11, 1983. The Rice Foundation noted that the executors were still serving as trustees, contrary to the terms of the May 11, 1983, order. The Rices, Jr., wanted written assurances that changing the dates would not affect their rights. The trial court refused to issue orders prior to

appropriate motions being made.

On August 1, 1983, the executors filed a petition seeking relief and enforcement of the May 11, 1983, order, alleging, *inter alia*, that the releases executed by the Rices, Jr., and delivered to Continental Bank were improper because they included the language "that the said person [referring to the Rices, Jr.] signed and delivered the said instrument as the free and voluntary act of Continental Illinois National Bank & Trust Co. of Chicago, Ill." and contained the date of May 5, 1983, and that Continental Bank owed a duty to the executors, was negligent, and breached its duty by providing release forms with an effective date of May 5, 1983, rather than the global settlement date of May 11, 1983. The executors sought an order excusing them from their obligations under the May 11, 1983, order until the Rices, Jr., executed proper releases, requiring Continental Bank to indemnify them, and awarding compensatory and punitive damages.

On August 4, 1983, the Attorney General filed a motion in the circuit court, asking the court to implement and enforce the May 11, 1983, order by compelling the executors to transfer the trust assets and the Rices, Jr., to execute and tender releases dated May 11, 1983.

At a hearing held on that same date, August 4, after hearing arguments of counsel, the trial court stated, *inter alia*, that there was no question that jurisdiction was properly before it, that jurisdiction is taken away by appeal, not by merely filing a motion in some other court and that the parties had five days to file a response to the Attorney General's motion for a rule to show cause and Continental Bank had 14 days to file a verified response to the executors' petition. The trial court ordered the executors to turn over the trust assets within 24 hours. The section of the transcript of that hearing which contained the trial court's verbal order was filed on August 11, 1983.

On August 15, 1983, the executors filed an additional petition for confirmation and compliance of releases, seeking an order declaring that the releases to be provided under the May 11, 1983, order were to cover acts and omissions through May 11, 1983, and that releases that had already been executed be corrected to cover acts and omissions through May 11, 1983. On August 25, 1983, the Illinois Supreme Court denied the Attorney General's petition for rule to show cause why the Rices, Jr., should not be held in contempt for failing to execute and deliver proper releases.

At a hearing on September 8, 1983, following arguments of counsel, the trial judge stated, *inter alia*, that evidentiary hearings in this instance would serve no useful purpose; [that as the trial judge stated on May 11 and based on the wording, demeanor and actions of coun-

sel, the settlement agreement included mutual general releases for all conduct through May 11, 1983;] that the releases of Daniel Rice, Jr., and Mary Rice shall, as a matter of law, cover all actions or omissions as stated in the document through May 11, 1983; that the releases filed by Daniel Rice, Jr., and Mary Rice were their releases and not the act of Continental Bank; that the May 11 order specifically provided that the court shall enter such orders as are necessary to enforce the release provisions of the settlement agreement; that the Rices, Jr., were not required to execute the indemnification agreement; that having ruled on the sufficiency of the releases and receipts of the Rices, Jr., all of the conditions precedent to the closing of the estate were satisfied and entry of the final account in the Dan Rice estate would be on October 7, 1983; that although typically the assets of the estate are not all distributed until the entry of the final account, under the unique circumstances of this case there was merit to Continental Bank's motion to fund Trust B3 with the remaining estate assets; that the executors were to transfer all remaining estate assets to Continental Bank, as trustee of Trust B3, by September 12, 1983; that refunding agreements were to be drafted to protect the executors from any potential liability for transferring the assets or closing the estate; and that while there may have been some mishandling by Continental Bank involved in the transfer of documents, there was no useful purpose in pursuing the executors' petition, and made no finding in that regard. The trial court granted Continental Bank's motion to dismiss the petition and denied the executors' motion to compel discovery, stating that its rulings negated any need for discovery.

On September 12, 1983, the executors filed a motion for relief pursuant to section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203), asking the trial court to vacate its order of September 8, 1983, by ordering specific performance of the May 11, 1983, settlement as to the execution of proper releases by the Rices, Jr. On the same date, the executors filed a notice of appeal to this court (No. 83—819) seeking review of the August 4 order, "filed of record on August 11, 1983."

At a hearing on September 15, 1983, on the section 2—1203 motion, following arguments of counsel including the argument by the executors that the court was without jurisdiction to consider their motion because of the filing of the notice of appeal, the trial court found that the executors' motion raised no new issues or argument why the ruling of September 8 should be modified, but merely asked for reconsideration; that it reviewed the matters again and must deny the motion; that it retained jurisdiction to enforce the settlement agreement

and the September 8 order did that; and that the September 8 ruling granted the relief requested by the executors. The trial court specifically commented on its ongoing practice of having the transcript stand as its order and noted that the transcript order was filed with the clerk by the executors' counsel on August 11, thereby in counsel's scenario extending the time for appeal, that the executors complied with the August 4 order on August 5, that the transcript was given to the executors on August 4 and that this was the first time in four years that a transcript was filed with the clerk. The executors appealed from the orders of September 8 and 15, 1983, on September 19, 1983 (No. 83—825).

Before addressing the appellate arguments of the executors, we note that the Rices, Jr., challenge the jurisdiction of this court to hear the appeal in No. 83—819. They maintain that the order appealed from was issued by the trial judge, without requiring a written order, during the hearing on August 4, 1983, and therefore the notice of appeal, filed on September 12, 1983, was not filed within 30 days. The executors argue that the 30-day period began to run on August 11, 1983, when the transcript of the August 4 proceeding was filed, so that the notice of appeal was timely.

■■ Under Supreme Court Rule 303, notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final order. (87 Ill. 2d R. 303(a)(1).) Supreme Court Rule 272 provides that "[i]f no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record." (87 Ill. 2d R. 272.) While we find nothing in the record before us that indicates when the order, orally issued on August 4, was noted in a minute book or on a docket sheet or other record-keeping document, we conclude that under the unique circumstances here, where the trial court specifically stated that the transcript stood as its order, the notice of appeal in No. 83—819 was timely filed within 30 days of the filing of the transcript.

■■ We next consider the executors' contention that the trial court was without jurisdiction to enter the orders of August 4 and September 8 and 15 because after 30 days from the date the agreed order of settlement was entered on May 11, 1983, the trial court retained jurisdiction only to enforce the settlement and lacked authority to modify it, yet the court's orders on those three dates effectively modified the terms of the settlement.

We disagree with the executors' characterization of the actions of the trial court following entry of the agreed order of settlement on

May 11, 1983. No appeal by any of the parties from the agreed order of settlement of May 11, 1983, was taken, and we regard all proceedings subsequent to May 11, 1983, as related to enforcement of the May 11, 1983, order. The trial court, by refusing to order the Rices, Jr., to execute an indemnification agreement and new releases and by ordering the executors to turn over the estate assets independent of the final account process, did not vary the agreed order of settlement, but merely sought to implement it. (See *Cities Service Oil Co. v. Village of Oak Brook* (1980), 84 Ill. App. 3d 381, 405 N.E.2d 379.) This is consistent with the policy of Illinois courts, which is to encourage compromises and settlement of litigation and to construe and enforce them in the courts in which they are entered. *W.R. Grace & Co. v. Beker Industries, Inc.* (1984), 128 Ill. App. 3d 215, 219, 470 N.E.2d 577.

In their additional petition for confirmation and compliance with the global settlement, the executors asked the trial court to declare that the releases to be provided under the global settlement were to cover acts and omissions through May 11, 1983, and that the releases that had been executed be corrected to cover acts and omissions through May 11, 1983. They did not request in that petition that the court order the Rices, Jr., to correct releases they had previously executed or to execute new releases to be in compliance with the global settlement. The trial court, within its sound discretion, granted the executors the relief they sought in enforcement of the global settlement when it judicially reformed the releases.

In ruling that the Rices, Jr., were not required to execute an indemnification agreement, the trial court properly construed all the provisions of the global settlement. While the Rices, Jr., were required to execute the indemnification agreement under the February 28, 1983, agreement and while that agreement is incorporated into the May 11, 1983, global settlement, the May 11, 1983, order specifically alters the indemnification obligations of the Rices, Jr., and the indemnification agreement is conspicuously absent from the list of documents the Rices, Jr., were required to execute. Furthermore, at the hearing on May 11, 1983, counsel for the Rices, Jr., stated that the May 11, 1983, settlement modified the February 28 agreement with respect to the obligations of Rices, Jr., to sign documents such that they were no longer required to sign indemnities. The executors did not, at that time, challenge the accuracy of counsel's representation, and thus implicitly agreed with that interpretation of the May 11, 1983, order.

As for ordering the transfer of estate assets independent of the

final account process, the global settlement does not establish a chronology of events. Thus, the trial court's order to turn over the estate assets was not a modification of the settlement terms in the agreed order of May 11, 1983.

■ The executors also claim that the trial court lacked jurisdiction because it acted while proceedings were pending before the Illinois Supreme Court. While the Attorney General had filed a petition for rule to show cause in the Illinois Supreme Court on July 25, 1983, we are not aware of any authority that the mere filing of a petition of this type in a reviewing court divests the trial court of its continuing jurisdiction to enforce its orders. At the time the petition was filed, the Illinois Supreme Court had already dismissed all appeals in this matter which were before it. Accordingly, this contention is meritless.

The executors additionally claim that once notice of appeal was filed on September 12, 1983, the trial court lost its jurisdiction so that the orders of September 15, 1983, are void.

■ The general rule is that the filing of a notice of appeal divests the trial court of jurisdiction; however, the trial court retains jurisdiction to determine matters collateral or incidental to the judgment. (*In re Estate of Denaro* (1983), 112 Ill. App. 3d 872, 878, 445 N.E.2d 1308; *In re Marriage of Legge* (1982), 111 Ill. App. 3d 198, 210, 443 N.E.2d 1089.) The hearing on September 15 was for the reconsideration of the orders of September 8. The September 8 orders involved turnover of the estate assets, reformation of the releases, denial of the petition for damages against Continental Bank, and other matters, all of which were only collateral to the August 4 order relating to the turnover of trust assets. Since the issues resolved during the hearings of September 8 and 15 were independent of those decided at the August 4 hearing, while admittedly all related to enforcement of the global settlement, notice of appeal from the August 4 orders did not divest the trial court of jurisdiction to rule on those independent matters.

■ The executors next contend that by reforming the releases, rather than ordering the Rices, Jr., to execute releases through May 11, 1983, the trial court denied them the benefit of their bargain which they claim is enforcement of the May 11, 1983, order and the peace of mind that they will not be exposed to liability for the period between May 5, 1983, and May 11, 1983. During that period, the executors filed fiduciary income tax returns for the trusts. Because of stays at various stages of litigation, distributions were not made and unanticipated tax consequences resulted. The executors fear that the reformation may not be held valid in potential future litigation and

that they will be responsible for deficiencies in trust distributions caused by the greater tax liability.

We see no basis for a future holding by any court that the reformation of the releases is invalid. We have already concluded that the trial court had jurisdiction at the time of the reformation. Here, the transcript of the hearing held on May 11, 1983, amply supports the trial court's finding that the parties intended the releases to cover acts and omissions through May 11, 1983. Although the Rices, Jr., have refused to execute releases absolving the executors of liability through May 11, 1983, they have not cross-appealed from the September 8, 1983, order granting judicial reformation of their releases, nor have the Rices, Jr., appealed from the May 11, 1983, settlement order. These unappealed-from orders are binding against Rices, Jr., in any other future court proceedings and effectively preclude the Rices, Jr., from contesting in the future the validity of the settlement order and the reformed releases. While the trial judge could have ordered the Rices, Jr., to execute new releases, his election to achieve the same result through judicial reformation was a proper exercise of his discretion.

Furthermore, the executors are concerned that the reformation is ineffective, yet they asked the trial court, in the prayer for relief in their additional petition for confirmation and compliance, for an order

> "declaring that the releases required to be provided under the terms and conditions of the global settlement are required to cover acts and omissions of releasees through May 11, 1983, the date of the global settlement, and, further, that any and all releases which have been executed and filed or exchanged between and among the parties under the global agreement be and hereby are corrected to the effect that such releases cover the acts and omissions of releasees through May 11, 1983, rather than cover only those acts and omissions of releasees that occurred prior to May 5, 1983."

They did not, in that petition, specifically demand that the Rices, Jr., be ordered to correct the releases they had previously executed. The trial court essentially granted them the relief they sought when it judicially reformed the releases. A party cannot complain of error which does not prejudicially affect him, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 386, 457 N.E.2d 9.) Thus, we believe that the judicial reformation of the releases was proper and binding on the Rices, Jr., in this and in any future litigation, the reformed releases

are valid, and the executors have received the benefit of their settlement.

We note, in addition, that the executors have other sources of protection from liability. All beneficiaries except for the Rices, Jr., executed complying releases. Moreover, the February 28, 1983, agreement, included in the May 11, 1983, order, provides that the successor trustee, Continental Bank, shall indemnify the executors against any suit arising out of the administration of the estate or trusts to the extent of the trust assets.

■■ The executors next argue that the execution of proper releases by the Rices, Jr., was a condition precedent to their resignation and to the turnover of the assets, and the trial court erred in ordering the executors to turn over the assets before proper releases were executed. A condition precedent is one which must be performed before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated. (*Peoria Harbor Marina v. McGlasson* (1982), 105 Ill. App. 3d 723, 729, 434 N.E.2d 786.) The executors maintain that because the exchange between Continental Bank and the Rices, Jr., was to take place, according to the May 11, 1983, order, "forthwith," by definition, other obligations arose thereafter.

We are not convinced, as we noted earlier, that a definite chronology of events was established by the terms of the settlement. Even if we agreed, *arguendo*, with the executors' interpretation on this point and further agreed that the trial court altered the chronology, we would hold that the error did not cause any harm. The executors have not shown they were prejudiced by the delay in obtaining complying releases, and since we have upheld the validity of the reformation by the trial court, the executors have received all they have bargained for.

■■ The executors next claim the trial court erred in dismissing their petition alleging negligence and seeking compensatory and punitive damages against Continental Bank. For Continental Bank to be liable for the tort of negligence, it must have had a duty towards the executors, it must have breached the duty, the breach must have been the proximate cause of the executors' injury, and there must be a resulting compensable injury. (*Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 259, 433 N.E.2d 1350.) We believe that Continental Bank owed no duty to the executors during the exchange of documents with the Rices, Jr. The executors argue that a duty arises because the bank is a professional fiduciary and had a duty arising out of the May 11, 1983, order which

provided that the Rices, Jr., would deliver the releases to the Continental Bank. The executors assert that the Continental Bank became an agent for all the parties, including them. The executors contend that the Continental Bank, as a professional fiduciary acting as their agent, had a duty to make sure the releases it accepted were proper. Although whether an agency exists is generally a question of fact, this is not the rule where, as here, the parties' relationship is so clear as to be undisputed. (*Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 821, 458 N.E.2d 1120.) Generally, the test of agency is the existence of the right to control the method or manner of accomplishing a task by the alleged agent as well as the agent's ability to subject the principal to personal liability. *Kozasa v. Guardian Electric Manufacturing Co.* (1981), 99 Ill. App. 3d 669, 676, 425 N.E.2d 1137.

The May 11, 1983, order directed the Rices, Jr., to deliver to Continental Bank certain documents and their releases and, upon delivery, for the Continental Bank to deliver to Rices, Jr., certain documents and $360,000. That the Continental Bank was designated in the May 11, 1983, agreed order to accept the releases and perform other tasks upon delivery of certain documents was a part of the total settlement of the litigation. We reject the executors' contention that the May 11, 1983, order created an agency relationship between the Continental Bank and the other parties whereby the Continental Bank owed a fiduciary duty to the other parties to make certain the releases were properly executed. The May 11, 1983, order effectuated a settlement of the litigation requiring, in part, certain parties to do specified acts. The order did not create an agency relationship, and the executors' petition seeking damages for negligence was properly dismissed.

■ Furthermore, the executors have not demonstrated a compensable injury. Further litigation is mere speculation, especially in light of our approval of the reformation of the releases. Delay in enforcement of the May 11, 1983, order because of the failure to provide complying releases extended the litigation, but that was an inconvenience to all, including the bank. Therefore, we conclude that the executors failed to state a cause of action for negligence against the bank.

The trial court did not dismiss the petition on this basis, but rather found no useful purpose in pursuing the petition and specifically refused to make a finding on whether Continental Bank mishandled the transfer of documents. However, a reviewing court is not bound to accept the reasons given by the trial court for its judgment, and the judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. (*Material*

*Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9; *Roche v. County of Lake* (1984), 126 Ill. App. 3d 976, 982, 467 N.E.2d 1146.) Despite reasons given by the trial court, we believe that its dismissal of the executors' petition against Continental Bank was proper because the executors' allegations failed to support a cause of action under a negligence theory.

■ Lastly, the executors raise several due process arguments which, in essence, restate contentions already addressed in this opinion and need not be reviewed again. Executors additionally complain that the May 17, 1983, letter from the trial judge to the chief justice of the Illinois Supreme Court advising him that he had been advised by the parties that the matter was "resolved to everyone's satisfaction" indicates "ex parte communication" resulting in a denial of due process. Considering the number of parties and lawyers involved, and the ongoing efforts of the trial judge to effectuate a settlement of this litigation agreeable to all parties involved, we find the letter, in the context of the entire record, certainly does not disclose improper communication amounting to a due process violation. We find this argument without any foundation or merit.

■■ Finally, the Rices, Jr., request, without corresponding argument, that they be awarded costs and attorney fees in responding to this "frivolous" appeal. When a judgment is affirmed on appeal, the appellee is entitled to costs (Ill. Rev. Stat. 1983, ch. 110, par. 5—120; 87 Ill. 2d R. 374), but the request for fees is denied.

For the foregoing reasons, the judgment orders of the circuit court in Nos. 83—819 and 83—825 are affirmed.

Affirmed.

NASH, P.J., and SCHNAKE, J., concur.