DEAN F. WEEKS, Plaintiff-Appellant, v. AETNA INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 85—0407

Opinion filed November 26, 1986.—Rehearing denied December 31, 1986.

LINDBERG, J., specially concurring.

Tris Michels Baker and Donald L. Puckett, both of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellant.

George E. Krippner and Theodore G. Schuster, both of Casey, Krippner & Callahan, of Geneva, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

Plaintiff, Dean F. Weeks, appeals from a judgment of the circuit court of Kane County in favor of defendant, Aetna Insurance Company. We affirm.

Plaintiff was insured under a disability policy issued by defendant when he suffered a multiple fracture of his right heel on June 16, 1976. The policy provided a $125-per-week benefit for total disability. Total disability was defined as follows:

"If such injuries shall, within thirty days after the date of acci-

dent, wholly and continuously disable the Insured and prevent him from performing every duty pertaining to his occupation, the Company will pay periodically weekly indemnity at the rate specified in the Schedule above for the period of such continuous total disability, but for not exceeding one hundred four consecutive weeks. After the payment of weekly indemnity for one hundred four weeks as aforesaid the Company will continue the payment of weekly indemnity at the same rate thereafter so long as the Insured shall be wholly and continuously disabled by such injuries from engaging in any substantially gainful occupation or employment for wage or profit for which he is qualified or may become qualified."

Defendant paid plaintiff a total of $33,625 in total disability benefits for the period from plaintiff's accident through June 1, 1981.

The primary issue at the bench trial in this case was whether plaintiff was still totally disabled under the terms of his policy after June 1, 1981. On this question the trial judge stated in a letter informing counsel of his decision: ·

"I feel, after listening to the evidence and, in particular, the plaintiff's own testimony, that plaintiff has failed to qualify under the terms of the contract document to show that he is wholly and continually disabled, and for that reason I find in favor of the defendant and against the plaintiff."

A motion by plaintiff for reconsideration was denied and this appeal followed.

Plaintiff raises four issues on appeal. Plaintiff argues that (1) defendant was vexatious and unreasonable in its handling of plaintiff's claim, (2) defendant had, and failed to meet, the burden of proving plaintiff's disability had ceased, (3) the court erred in admitting into evidence the income tax returns of the insurance agency plaintiff owned "and by finding plaintiff not disabled under the policy," and (4) "[d]efendant did not produce competent proof as to those activities or occupations for which Mr. Weeks might become qualified and, thereby, failed to sustain its burden of proof."

■ Plaintiff first argues that defendant was vexatious and unreasonable in its handling of plaintiff's claim and that "[t]he trial court failed to consider plaintiff's demand for remedies under Ch. 73, Par. 767, Illinois Revised Statutes." (Ill. Rev. Stat. 1981, ch. 73, par. 767.) Defendant argues, *inter alia*, that liability under the insurance policy must be established before plaintiff could be entitled to penalties under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 767). Plaintiff responds to this claim arguing that while it was

formerly true that only a prevailing party could be granted penalties under section 155, an amendment to the statute has eliminated that requirement. (Compare Ill. Rev. Stat. 1975, ch. 73, par. 767, with Ill. Rev. Stat. 1981, ch. 73, par. 767.) It is unnecessary to decide this legal issue because plaintiff's contentions in the trial court required defendant to be liable under the policy before plaintiff could be entitled to penalties under section 155.

In the trial court, plaintiff never contended that he was entitled to section 155 relief even if defendant was not liable under the insurance policy. This was true even as late as plaintiff's memorandum in support of his motion for reconsideration of the trial court's finding for defendant. Most significantly, in his complaint, plaintiff's allegation relative to section 155 was:

> "That said failure, neglect, and refusal of Defendant to pay the Plaintiff the several sums of money due and owing to him in accordance with the terms of said policy were, and are, vexatious and without reasonable cause."

From this it is clear that the acts alleged by plaintiff to be vexatious and unreasonable were defendant's "failure, neglect, and refusal" to pay to plaintiff benefits owed plaintiff under the insurance policy. It follows that defendant could not have committed this alleged vexatious and unreasonable conduct if the benefits were not owed to plaintiff. Consequently, once the trial court determined that plaintiff was not entitled to further benefits under the policy, that finding necessarily meant that plaintiff could not be entitled to penalties under section 155 on the basis of the conduct alleged in the complaint. The trial court therefore did not err in not granting plaintiff penalties under section 155.

■■■ Plaintiff next argues that the trial court erroneously placed the burden of proving he was totally disabled on plaintiff. Plaintiff maintains that although an insured initially has the burden of proving he is totally disabled, once the insurer makes a disability payment, it has the burden of proving the insured is no longer totally disabled.

The plaintiff, an agent of the defendant company for many years, paid a regular premium for a disability policy which provided a weekly indemnity for total disability. The plaintiff fell and was injured on June 16, 1976, and pursuant to the policy provisions, submitted a written notice of claim within 20 days. He received forms from the company for filing proofs of loss which he completed. After providing defendant with notice and proofs of loss, plaintiff received payments from the defendant for 104 weeks pursuant to the terms of the policy. At the end of 104 weeks, defendant found plaintiff to be wholly and

continuously disabled by said injuries from engaging in any substantially gainful occupation or employment for which he was qualified or may be qualified. Defendant continued payments for approximately 156 additional weeks. Because of a statement that plaintiff had returned to work, defendant reinvestigated plaintiff's claim. It determined he was no longer eligible for compensation and, in July 1981, the company terminated the payments.

Where the provisions of an insurance contract are clear and unambiguous and neither illegal nor against public policy, they are to be enforced by the courts. (*Equity General Insurance Co. v. Patis* (1983), 119 Ill. App. 3d 232, 236.) The general rules governing the interpretation of contracts of insurance do not differ from those controlling in other contract cases. The courts' primary concern is to give effect to the intent of the parties as expressed in the contract. In so doing, words are to be given their plain and ordinary meaning, and where a clause is clear and unambiguous, it will be applied as written, unless it contravenes public policy. *Strezelczyk v. State Farm Mutual Automobile Insurance Co.* (1985), 138 Ill. App. 3d 346, 349.

■ A reasonable construction of the plain language of the policy provisions establishes a procedure by which an injured person gives notice, receives claim forms, completes them, is investigated, and receives payment. The company, during the pendency of any claim, has a right to conduct, at its expense, any physical examinations it may require and the right to terminate the payments when they determine that they are no longer liable. For five years the parties treated these policy provisions according to their plain meaning. During the five years the defendant made payments, no additional requests for information, medical examinations or further proofs were made. The plain language of the policy and its interpretation and treatment by the parties for five years makes it clear that proving no further liability under the policy was the proper burden of the company. Common sense, as well as contract language, mandates this result.

■ The defendant argues that there is an ambiguity and that the policy mandates that the plaintiff must bear the burden of continuously proving his disability. The question of whether a policy is ambiguous is a matter of law, in which the court examines the language at issue in the light of the policy as a whole. In making its determination the court must construe the policy in its entirety, giving effect to every part of the policy. (*Management Support Associates v. Union Indemnity Insurance Co. of New York* (1984), 129 Ill. App. 3d 1089, 1092.) In interpreting the provisions of an insurance policy, the intent of the parties is the most significant factor, and any ambiguity should

be construed in favor of the insured. (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 390-91.) It is a well-established rule that where an ambiguity exists in an insurance contract covering a disability, that ambiguity must be construed against the insurance company. (*Bessler v. John Hancock Mutual Life Insurance Co.* (1981), 99 Ill. App. 3d 230, 233.) Reading all of the provisions of the policy and applying the rules of contract law in this State, we hold that the policy language only requires the plaintiff (1) to comply with the terms of the contract within 20 days after the occurrence of any injury and (2) to complete the claim forms furnished by the company so as to comply with their requirements for proof of loss. The insurance company then has the burden of proving that it is no longer liable to pay the insured's compensations. This is not an unreasonable burden since it will have all of the original records and proofs of loss as well as the right to any continuing investigation it wishes to conduct. This holding, however, does not require us to reverse the outcome of the cause below since we believe, as we shall later discuss, that the defendant satisfied its burden of proof under these facts.

■■■ The third and fourth issues raised, insofar as they concern evidentiary questions, may be discussed together. In arguing his third issue, plaintiff maintains that certain income tax returns were inadmissible, apparently on relevancy grounds. In arguing his fourth issue, plaintiff maintains that medical testimony is not alone sufficient to establish that he was not totally disabled. These propositions were central to the two issues raised. While citing cases concerning the general sufficiency of the evidence and disability under the Workers' Compensation Act, plaintiff has not cited any authority relative to these propositions on which his arguments are based. This violates Supreme Court Rule 341(e)(7) and these arguments accordingly will not be considered. 103 Ill. 2d R. 341(e)(7); *People v. Ramirez* (1983), 98 Ill. 2d 439, 472; *In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684; *Kavanaugh v. Estate of Dobrowolski* (1980), 86 Ill. App. 3d 33.

■■■ As a final matter, we note that in several of his issues plaintiff attacks the sufficiency of the evidence to support the trial court's finding. We find that the judgment for defendant was not against the manifest weight of the evidence. Dr. E. Thomas Marquardt, testifying for defendant, gave his opinion that plaintiff was capable of performing sedentary work, and he listed several activities that plaintiff could perform. Although Dr. Richard P. Foth, plaintiff's treating physician for several years, was of the opinion plaintiff could not perform his old job of insurance salesman with all the time he had spent on his

feet, Dr. Foth did not testify that plaintiff could not perform a sedentary job. The disputed tax returns showed that the insurance agency plaintiff owned was profitable, and plaintiff held all of the officer positions in, and was sole shareholder of, the corporation. Plaintiff testified that he spent most of the time in a hospital bed in his room next to the place where the agency did business from his home, and that his son-in-law, secretary, and wife basically did all of the work for the agency. However, plaintiff did do some of the telephone work for the agency, occasionally worked at his desk, occasionally signed documents, and once in awhile would go to see a longtime customer on a social call. Finally, when plaintiff testified, the trial court was in a position to observe his movements, including at least one occasion shortly after plaintiff had climbed three flights of stairs at the courthouse. All of this establishes that plaintiff was not "wholly and continuously disabled from engaging in any substantially gainful occupation or employment for wage or profit for which he is qualified or may become qualified." The trial judge's determination was not against the manifest weight of the evidence.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

NASH, P.J., concurs.

JUSTICE LINDBERG, specially concurring:
I respectfully dissent from the majority reasoning that the disability provision is so ambiguous as to be interpreted against the insurance company. (*Bessler v. John Hancock Mutual Life Insurance Co.* (1981), 99 Ill. App. 3d 230, 233, 425 N.E.2d 508.) While acknowledging that the policy must be read as a whole, the majority, nonetheless, does not cite the proof-of-loss and time-of-payment-of-claims provisions which are also found in the policy. Therefore, I conclude that when the policy is addressed in its entirety, the disability provision is not ambiguous and the burden of proof is upon plaintiff to prove his continuing disability.

At the outset a distinction should be kept in mind. While plaintiff, at least initially, was considered *totally* disabled he was never determined to be *permanently* disabled.

Plaintiff maintains that, although initially an insured has the burden of proving he is totally disabled, if an insurer makes a disability payment it has the burden of proving the insured is no longer totally disabled. Based upon this allocation of the burden of proof, plaintiff

further maintains that "defendant did not sustain its burden." This last contention need not be addressed because I believe the trial court properly placed the burden of proving total disability on plaintiff.

Neither party has cited, and my research has not disclosed, an Illinois case deciding this issue. Authorities from other jurisdictions are divided on the question of whether the making of a payment for disability shifts the burden to the insurer to prove disability has ceased. (See, *e.g.*, *Aetna Life Insurance Co. v. Fruchter* (Fla. 1973), 282 So. 2d 36; *Forman v. Prudential Insurance Co. of America* (1944), 310 Mich. 145, 16 N.W.2d 696; 46 C.J.S. *Insurance* sec. 1319 (1946).) Although these authorities appear to have established rules generally applicable in all cases in which an insurer has started and then discontinued disability payments, I believe that the issue raised can only be resolved by applying general principles of Illinois law to the specific insurance policy at issue.

Generally, a plaintiff has the burden of proving his cause of action by a preponderance of the evidence while a defendant has that burden with respect to any affirmative defense raised. (See *Noyes v. Gold* (1941), 310 Ill. App. 1, 34 N.E.2d 1.) In an action on an insurance policy, an insured has the burden of proving that the loss claimed comes within the terms of the policy. (*Sell v. Country Mutual Insurance Co.* (1960), 23 Ill. App. 2d 497, 163 N.E.2d 547.) It has long been the law that a plaintiff-insured will not be entitled to recover in an action on an insurance policy if he has not pleaded and proved the occurrence of any conditions precedent in the policy. (*Continental Life Insurance Co. v. Rogers* (1887), 119 Ill. 474, 486, 10 N.E. 242, 248.) On the other hand, the burden of pleading and proving the occurrence of a condition subsequent rests with a defendant-insurer. *Scott v. Freeport Motor Casualty Co.* (1945), 392 Ill. 332, 341-42, 64 N.E.2d 542, 547.

The parties disagree on the operation of the total disability provisions of the policy, defendant maintaining that continuation of total disability is a condition precedent and plaintiff maintaining that cessation of total disability is a condition subsequent. A condition precedent is one which must occur before a contract becomes effective or which must occur before one party to an existing contract is obligated to the other party, while a condition subsequent is one which divests liability that has already attached upon the occurrence or nonoccurrence of the condition. (Black's Law Dictionary 266 (5th ed. 1979); *In re Estate of Rice* (1985), 130 Ill. App. 3d 416, 428, 473 N.E.2d 1382, 1390; *Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 163, 463 N.E.2d 1339, 1344.) Whether a provision of a contract creates a condition of either type is a question of construction depending on the in-

tent of the parties, which is ascertained from the words employed by reading and interpreting all provisions of the contract together. 17A C.J.S. *Contracts* secs. 338, 339 (1963).

The one provision of the policy at issue provided:

> "[T]he Company will continue the payment of weekly indemnity at the same rate thereafter so long as the Insured shall be wholly and continuously disabled by such injuries from engaging in any substantially gainful occupation or employment for wage or profit for which he is qualified or may become qualified."

This language is most reasonably interpreted as making defendant's liability to pay total disability benefits for a particular period contingent upon plaintiff's being "wholly and continuously disabled" during that period. In other words, total disability during a period is a condition precedent to defendant's obligation to pay total disability benefits for the period.

Support for this interpretation may be found in other provisions of the policy, which state:

> **"Proofs of Loss:** Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after termination of the period for which the Company is liable***.

> **Time of Payment of Claims:** *** Subject to due written proof of loss, all accrued indemnities for loss for which this policy provides periodic payment will be paid at the expiration of each four weeks during the continuance of the period for which the Company is liable, and any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof." (See substantially similar language in statutes establishing minimum requirements for these provisions at Ill. Rev. Stat. 1985, ch. 73, pars. 969.1, 969.8, 969.9.)

Thus, defendant was not obligated to pay benefits for a period until "due written proof of loss" for that period was furnished by plaintiff. (See also Ill. Rev. Stat. 1983, ch. 73, par. 969.9a.) Such a provision is consistent with a construction of the policy making total disability during a period a condition precedent to defendant's obligation to pay total disability benefits for the period, as it permits the insurer to determine whether the condition has occurred before paying the benefits.

A similar scheme has been adopted statutorily in Illinois regarding the disability pensions of firefighters. (Ill. Rev. Stat. 1985, ch.

108½, par. 4—112.) Section 4—112 provides "[m]edical examination of a firefighter receiving a disability pension shall be made at least once each year prior to attainment of age 50 in order to verify continuance of disability." Thus, it does not appear unreasonable or against public policy to place the burden of proof on a claimant either statutorily or by insurance contract particularly where no permanency has been established.

Plaintiff's continuing to be totally disabled was therefore a condition precedent, from a reading of the entire policy of insurance, to defendant's obligation to pay further total disability benefits. The trial court did not err when it interpreted the contract of insurance and placed the burden of proving total disability on plaintiff.

Finally, I do not believe that this case can be affirmed if, as the majority argues, the burden of proof was defendant's. From the trial judge's letter informing counsel of his decision, it is apparent that the trial court believed it was up to plaintiff to show he was "wholly and continuously disabled" and that plaintiff failed to make this showing. The court thus placed the burden of proof of disability on plaintiff, where the majority holds it does not belong. The majority does not reverse, however, because it believes defendant satisfied its burden of proof.

If the question were simply whether the trial court's decision for defendant was against the manifest weight of the evidence, I would agree. I would agree that the evidence was sufficient to sustain the court's decision regardless of who had the burden of proof on the issue, so long as the trial court correctly understood who had that burden. In the case at bar, though, the majority's analysis would lead to the conclusion that the trial court improperly allocated the burden of proof to plaintiff rather than defendant. The evidence on the issue, recited by the majority, was not so strong that a decision for plaintiff would have been against the manifest weight of the evidence, particularly when the burden of proof is placed on defendant. On this state of the evidence, I would not find an error in allocating the burden of proof to plaintiff nonprejudicial.

Therefore, I believe that the majority's holding with respect to the burden of proof should result in reversal and a remand for a new trial.