*In re* J.B. *et al.*, Respondents-Appellees (The People of the State of Illinois, Petitioner-Appellee, v. James C., Respondent-Appellant).

First District (1st Division)   No. 1—00—3730

Opinion filed June 28, 2002.

Bruce H. Bornstein, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, Jennifer Streeter, and Michelle Luburic, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Ron Fritsch, Charles P. Golbert, and Lisa H. Huge, of counsel), guardian *ad litem*.

JUSTICE TULLY delivered the opinion of the court:

Respondent James C. appeals from the orders of the trial court finding J.B., C.T., and D.C. to be abused minors and adjudging the minors to be wards of the court. On appeal, respondent contends that (1) the trial court erred when it named him as the perpetrator of the sexual abuse of J.B. because doing so deprived him of his right to due process, and (2) the trial court erred when it found that he was unwilling and unfit to care for D.C. We affirm.

## BACKGROUND

On April 15, 1999, the State filed petitions for the adjudication of wardship of J.B., C.T., and D.C. Each petition identified Roena T. as that minors' mother. The petitions for J.B. and C.T. indicated that their fathers were unknown. The petition for D.C. identified respondent as her father. The petition for D.C. alleged that she was neglected because she was born with a controlled substance in her system. The petition further alleged that D.C. was subjected to an environment injurious to her welfare because Roena T. had previously given birth to three infants exposed to illegal drugs and had never completed drug treatment. The petitions for C.T. and J.B. alleged that they were exposed to an environment injurious to their welfare based on the same allegation of illegal drug use.

On April 16, 1999, the trial court found that probable cause existed that the minors were abused or neglected based on the allegation that Roena T. had given birth to three drug-exposed infants. The trial court further found that Roena T. had entered a 90-day in-patient drug treatment program. The trial court ordered that D.C. remain in the care of respondent. The trial court granted temporary custody of C.T. and J.B. to respondent. The trial court also entered an order of protection that, *inter alia*, barred Roena T. from residing with respondent and the minors. On August 25, 1999, the trial court entered a modified order of protection that allowed Roena T. to reside with respondent and the minors.

On September 14, 1999, the trial court vacated its prior temporary custody orders and granted the Department of Children and Family

Services (DCFS) temporary custody of the minors. On October 12, 1999, the trial court granted the State leave to file amended petitions for adjudication of wardship. The State amended its petition in J.B.'s case and added an allegation that she had been sexually abused by respondent. The State amended the other two petitions and added an allegation that C.T. and D.C. were subjected to an injurious environment because a sibling had been sexually abused by respondent.

On November 24, 1999, the State moved to consolidate the three cases that are the subject of this appeal with nine additional petitions for adjudication of wardship. The additional cases involved the children of Roena T.'s sister, who had been residing with respondent. The trial court granted the motion and continued the matter for trial.

On May 17, 2000, the trial court commenced an adjudicatory hearing. Gloria Lewis, a DCFS investigator, testified that on September 10, 1999, she was assigned to investigate allegations of physical harm and sexual molestation. Lewis testified that she interviewed J.B. J.B. told Lewis that respondent whipped her with an extension cord. J.B. also said that respondent touched her with his "thing" and touched her "stuff" with his hand. J.B. further stated that respondent put his thing between her legs. Respondent's attorney indicated that he had no questions for Lewis on cross-examination.

Michael G. Bazarek, a Chicago police officer, testified that he interviewed respondent on September 12, 1999. Bazarek testified that respondent made a "handwritten" statement to Bazarek and an assistant State's Attorney. Respondent was given an opportunity to review the statement and made corrections. Respondent, Bazarek and the assistant State's Attorney each signed the statement.

Respondent objected to admission of the statement arguing that it was hearsay. The trial court overruled the objection holding that respondent adopted the handwritten statement when he made corrections and signed it. Bazarek further testified that respondent made a second handwritten statement that day. Respondent raised the same objection to the second statement, and the trial court overruled respondent's objection.

On cross-examination by respondent, Bazarek testified that the statements did not record respondent's statements to the police word for word. Bazarek further testified that respondent was arrested at 6 p.m and did not give the statements until approximately 4:30 a.m.

In the statement, respondent admitted that in February 1999, when J.B. was eight years old, he rubbed his penis against her vagina. Respondent stated that he rubbed his penis against her vagina for approximately four minutes. Respondent further stated that he stopped because it was wrong because of J.B.'s young age.

The State also presented the medical records related to D.C.'s birth. The medical records indicated that Roena T. tested positive for cocaine and D.C.'s urine tested positive for cocaine.

After the State rested its case, respondent's attorney argued that because respondent had been named as a party respondent in only D.C.'s case he could not be named as a perpetrator in any of the other cases. The trial court found that respondent had been represented by counsel throughout the proceedings and had objected to the admission of evidence related to children other than D.C. The trial court found that each of the children was abused or neglected and identified respondent as the perpetrator of the abuse in J.B.'s case.

On October 20, 2002, the trial court conducted a dispositional hearing. Alex McNulty, a social worker, testified that he was the case manager for J.B., C.T., and D.C. McNulty testified that the minors had been placed in foster care and had remained in the same foster home for more than 18 months. McNulty described the services the minors and Roena T. were receiving. McNulty further testified that respondent was incarcerated in the Cook County jail. McNulty testified that he had not contacted respondent personally. McNulty had received no correspondence from respondent and had not received any telephone calls from respondent or his attorney requesting visitation. McNulty opined that it was in the best interests of the minors to be adjudged wards of the court.

The State argued that all three children should be adjudged wards of the court. The State further argued that Roena T. should be found unable to care for the minors and that respondent should be found unable, unwilling, and unfit to care for D.C. Respondent argued that he should only be found unable based on his incarceration. The trial court adjudicated the three minors wards of the court and found that Roena T. was unable to care for the minors. The trial court further found that respondent was unable, unwilling, and unfit to care for D.C. Respondent timely appeals. We affirm.

## DISCUSSION

### Motion to Dismiss

■ While this case was pending on appeal, the public guardian moved to dismiss the appeal, in part, as it relates to D.C. and C.T. We ordered that motion taken with the case. The public guardian's motion to dismiss the appeal raised no issue regarding this court's jurisdiction to consider respondent's appeal, and the public guardian incorporated the arguments contained in its motion to dismiss into its brief addressing the substantive issues in this case. These issues were fully briefed by the parties and we have considered them as part of

our disposition of this appeal on the merits. Accordingly, we deny the public guardian's motion to dismiss as moot.

## Perpetrator Finding

■ Respondent contends that the trial court abused its discretion when it named him as the perpetrator of abuse against minors other than D.C. because doing so constituted a denial of due process. Respondent's argument refers to multiple findings that he was the perpetrator of abuse. However, of the cases before us, respondent was named as the perpetrator of abuse in only J.B.'s case. Respondent may be referring to findings entered in the other nine cases which were consolidated with the three before us. However, respondent's notice of appeal did not refer to those cases and we are therefore without jurisdiction to consider the propriety of any action taken in those cases. See *Perry v. Minor*, 319 Ill. App. 3d 703, 708 (2001) (holding appellate court has jurisdiction over only those matters raised in notice of appeal). Accordingly, we will consider only whether the trial court abused its discretion when it named respondent as the perpetrator of the sexual abuse against J.B.

Respondent's arguments rely on the holding in *In re A.M.*, 296 Ill. App. 3d 752, 757 (1998). In *A.M.*, the trial court heard testimony that the victim had been sexually abused by her mother's paramour. The trial court found that the victim was abused but refused to make a finding that the paramour perpetrated the abuse. The trial court reasoned that the paramour was not a party to the proceedings and naming him would be a denial of the right to due process. The victim, through her guardian *ad litem*, appealed. The reviewing court affirmed, holding that it would be fundamentally unfair to name the paramour as the perpetrator of abuse because he was not a party and was not allowed to participate in the proceedings. *A.M.*, 296 Ill. App. 3d at 757.

In the case before us, the parties dispute whether respondent was a party to J.B.'s case. Respondent argues that he was not named as a respondent in the petition for adjudication of wardship and was not served with the petition. The public guardian argues that respondent was a party to the proceedings as a consequence of his appointment as J.B.'s temporary custodian. See *In re D.L.*, 226 Ill. App. 3d 177, 186-87 (1992) (holding that temporary custodians are proper parties to a petition for adjudication of wardship). However, we find it unnecessary to resolve the issue of respondent's status as a party because we find that under the circumstances of this case, the due process concerns identified in *A.M.* are not implicated.

■ Procedural due process requires notice and the opportunity to

be heard. *In re D.P.*, 319 Ill. App. 3d 554, 558 (2001). We find that, regardless of respondent's status as a party to J.B.'s case, he was afforded both notice and an opportunity to be heard. The amended petition for adjudication of wardship filed in D.C.'s case alleged that respondent sexually abused D.C.'s sibling. Respondent does not contend that he was not served with the amended petition. Accordingly, respondent was given unequivocal notice of the State's allegation that he sexually abused one of D.C.'s siblings. Further, respondent was given an opportunity to be heard. The cases were consolidated for the purpose of the adjudication hearing. Respondent was present and represented by counsel. Respondent was afforded the opportunity to cross-examine witnesses and object to the admission of evidence. In short, regardless of his status, respondent was afforded all the procedural safeguards to which he would have been entitled if he were a party to the proceedings. Therefore, we conclude that the trial court did not abuse its discretion when it named respondent as the perpetrator of the sexual abuse in J.B.'s case.

### Unwilling and Unfit Findings

Respondent also contends that the trial court's determinations that he was unwilling and unfit to care for D.C. were an abuse of discretion. The public guardian and the State respond that the issue is moot because respondent concedes that he was unable to care for D.C. as the result of his incarceration.

■ Section 2—27(1) of the Juvenile Court Act (705 ILCS 405/2—27(1) (West 2000)) provides:

> "If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit *or* are unable *** to care for, protect, train or discipline the minor *or* are unwilling to do so, *** the court may at [the dispositional] hearing and at any later point:
> * * *
> (d) commit the minor to the Department of Children and Family Services for care and service ***." (Emphasis added.) 705 ILCS 404/2—27(1) (West 2000).

This issue of mootness and the proper interpretation of section 2—27(1) was addressed in *In re Lakita B.*, 297 Ill. App. 3d 985 (1998). In *Lakita B.* the trial court found that the respondent mother was unable and unfit to care for the minor. The respondent did not challenge the trial court's finding that she was unable to care for the minor, and the reviewing court held that she had waived the issue on appeal. *Lakita B.*, 297 Ill. App. 3d at 991-92. The reviewing court examined the language of section 2—27 of the Act and concluded:

"By wording the terms in the disjunctive, the legislature intended that custody of a minor can be taken away from a natural parent if that parent is adjudged to be *either* unfit *or* unable *or* unwilling." (Emphasis in original.) *Lakita B.*, 297 Ill. App. 3d at 992. The reviewing court concluded that, because the trial court's unable finding was sufficient to support its judgment, the issue of the trial court's additional finding that the respondent was unfit was moot. *Lakita B.*, 297 Ill. App. 3d at 992-93.

■ In the case before us, the issues of the trial court's unfit and unable findings are similarly moot. Respondent concedes that, because he was incarcerated, he was unable to care for D.C. This finding alone is sufficient to support the trial court's order placing D.C. in DCFS custody. Even if we determined that the trial court erred when it found respondent unfit and unwilling to care for D.C., that determination would have no effect on the trial court's judgment. Therefore, the issue is moot and we need not, and will not, consider whether the trial court properly determined that respondent was unfit or unwilling to care for D.C.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY and COUSINS, JJ., concur.