2026 IL App (1st) 251069-U

FIRST DIVISION
June 15, 2026

No. 1-25-1069

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* A.H., AZA H., and SEM H., Minors | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | Nos. 15 JA 107, 15 JA 108, |
| v. | ) | 16 JA 206 |
| | ) | |
| ALEX R., | ) | |
| | ) | Honorable Patrick T. Murphy, |
|     Respondent-Appellant). | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We dismiss the appeal for lack of jurisdiction. The trial court did not enter a written judgment in accordance with Illinois Supreme Court Rule 272 and there is no notation in the record on the outcome of the last hearing. Therefore, there is no final order and the notice of appeal did not confer jurisdiction on this court.

¶ 2    Respondent Alex R. appeals from the circuit court's decision to grant private guardianship of his children to their maternal uncle. On the date the guardianship petition was originally scheduled to be heard by the court, Alex R. objected and the trial court indicated it was continuing the case for a hearing. However, on the same day, without any explanation, the trial

court entered an order purporting to grant private guardianship to the children's maternal uncle. The order indicated it was entered after a hearing, despite no hearing being held that day.

¶ 3    Two days later, the parties appeared in court for the scheduled hearing. No one, including the court, mentioned that the order granting the guardianship petition had been entered. The hearing went forward without any issue. Several witnesses were called, the parties were represented by counsel, and the court took both documentary and testimonial evidence. Following the hearing, the trial court made an oral ruling that it was granting the petition for guardianship in favor of the children's maternal uncle. The trial court orally indicated on the record that the case was closed. No written order was entered nor was the ruling entered on the record as required by Supreme Court Rule 272. Respondent Alex R. now appeals the trial court's decision to grant the private guardianship. After reviewing the record, we have determined the appellate court does not have jurisdiction to hear this case and, therefore, we dismiss the appeal.

¶ 4                                 BACKGROUND

¶ 5    Respondent Alex R. is the natural father of minors A.H., Aza H., and Sem. H. In February 2015, the circuit court adjudicated two of the minors, A.H. and Aza. H., to be wards of the court. The two children were placed in the guardianship of the Department of Child and Family Services. A third child, Sem. H., was born approximately a year later and was also placed in DCFS custody. All three children were found to be abused and neglected. The children's mother has cognitive deficits that leave her unable to care for the children. Alex R. failed to complete the services offered to him to support reunification with the children and he failed to visit them with any frequency despite being granted the right to visitation by the court. He was found by the court to be either unable or unwilling to care for the children.

¶ 6    DCFS placed the children in the custody of their maternal great grandparents as foster parents. Eventually, the circuit court granted private guardianship to the maternal great grandparents. Specifically, private guardianship was granted to the children's great grandfather. The children thrived in their guardianship placement. Two years later, however, the great grandfather moved to end his guardianship of the children because of health issues he was facing. The court granted the motion and reappointed DCFS as the children's guardian.

¶ 7    DCFS later placed the children with their maternal uncle as a foster parent. The children were doing well in the care of their uncle, and their uncle was willing to act as the children's private guardian. The circuit court noted that the children's father had not been involved, and the permanency goal for the children was set as a private guardianship with their uncle serving as their guardian. Eventually, DCFS filed a petition to vacate its guardianship of the children and to have their uncle appointed as their private guardian. The petition was scheduled to be heard in the circuit court on June 2, 2025.

¶ 8    When DCFS's petition was set to be heard on June 2, 2025, the children's father, Alex R., appeared in court through counsel. After some discussion, Alex R. made clear that he objected to the children's maternal uncle being appointed as their guardian. Alex R. argued that he should be given custody of the children. The circuit court stated that, if Alex R. was objecting to private guardianship, then the court was required to hold a hearing. The court expressed surprise at Alex R.'s sudden appearance in the case and his objection to the guardianship because he had not really been involved in the case in the many years it had been ongoing, but the court stated that, nonetheless, "he's entitled to a hearing." The court set the hearing for two days later, June 4, 2025.

¶ 9 On the same date of the court appearance, June 2, 2025, the circuit court entered a written private guardianship order. The order states that the court, "after hearing all of the evidence, with all parties either present or on notice" finds that it is in the best interests of the child to no longer be a ward of the court. The order goes on to state that DCFS's guardianship is vacated and the children's maternal uncle is established as their private guardian. The order is dated and stamped with the trial judge's signature, and it is file stamped "entered, Jun. 2, 2025." Letters of Office appointing the children's uncle as their guardian were also entered on June 2, 2025 stating that they are "now in force and effect." However, no hearing was held on June 2, 2025, instead the hearing was scheduled for two days later on June 4, 2025. The circuit court's pronouncements in open court seem to indicate that an order disposing of the guardianship petition was not intended at that time.

¶ 10 Also on June 2, 2025, the court entered a continuance order stating that the motion to close the case to private guardianship was continued to June 4, 2025. This order is in accord with the trial court's oral pronouncements in which it indicated that it was continuing the case for a hearing on the guardianship petition and that the parties, including Alex R. were expected to attend the hearing in person.

¶ 11 On June 4, 2025, the parties appeared in court and a hearing was conducted for the appointment of the children's maternal uncle as their guardian. The hearing went forward without anyone discussing or acknowledging the June 2, 2025 order that had already been entered putatively resolving the matter. It appears from the transcript of the hearing that none of the parties, including the court, made mention that an order had already been entered on the subject.

¶ 12     The evidence at the hearing fairly convincingly showed that Alex R. had failed to avail himself of any of the opportunities to regain custody of the children during the ten years the children had been out of his custody. Alex R. had similarly not taken advantage of his opportunities to visit the children during the lengthy period they had been out of his custody, and he never completed the services offered to him by DCFS in support of the prior goal of reunifying the children with their natural parents. The children's mother supported their uncle being appointed as their guardian, and the children's representatives expressed that it was in the children's best interests to have their uncle appointed as their guardian.

¶ 13     Alex R. testified that he presently takes care of two of his younger children and believes that the children involved in this case should be returned to his care. He testified that he has a stable job and he had been in contact with the children and had sometimes sent them money for snacks.

¶ 14     Following the evidence, the trial court ruled from the bench and stated that it was "granting the guardianship motion." The trial court explained that, although Alex R. testified he was willing to parent the children, the evidence showed that he was unwilling. The trial court explained that guardianship with the children's uncle was in their best interests and also provided the children with needed permanency. The trial court informed Alex R. that he had 30 days to appeal.

¶ 15     No written order or notation in the record memorializing the trial court's oral pronouncements after the June 4, 2025 hearing was ever entered.

¶ 16     Alex R. filed a notice of appeal on the date of the hearing, June 4, 2025, after the hearing took place. He indicated in his notice of appeal that he was appealing and sought reversal of the June 4, 2025 private guardianship order. Alex R. filed a motion in this court to amend his notice

of appeal, indicating that wanted to appeal from the June 2, 2025 order as well. We granted his motion to amend the notice of appeal and indicated that the amended motion was deemed to relate back to the date the original notice of appeal was filed.

¶ 17                                ANALYSIS

¶ 18     Alex R. argues that we should vacate the June 2, 2025 order as having been entered in violation of his due process rights (citing *Goldberg v. Kelly*, 397 U.S. 254, 269-71 (1970)). Alex R. argues that he was deprived of due process because the trial court entered the guardianship orders for his minor children before holding a hearing. In the context of proceedings involving the custody and care of minor children, due process requires notice, the opportunity to be heard, and the opportunity to confront opposing witnesses. *In re J.B.*, 332 Ill. App. 3d 316, 321-22 (2002); see also 705 ILCS 405/1-5(1) (West 2024) (granting parents the right to be heard, present evidence, and cross-examine witnesses in proceedings involving the custody of minor children). We review *de novo* the question of whether the proceedings affecting the custody and care of a minor satisfy due process. *In re J.M.*, 2020 IL App (2d) 190806, ¶ 37.

¶ 19     DCFS argues that the procedures at the June 4, 2025 hearing satisfied Alex R.'s due process guarantees. DCFS, among other arguments, contends that the entry of the June 2, 2025 orders before a hearing was held does not constitute a due process violation where a full hearing meeting all due process requirements was held two days later before Alex R. was finally deprived of any protected liberty interest. The State filed a brief indicating that it was adopting DCFS's arguments. The Office of the Public Guardian similarly argues, among other contentions, that Alex R. received all due process protections guaranteed to him. Both DCFS and the Public Guardian argue that Alex R. has waived or forfeited many issues for appeal.

¶ 20    The case presents a question of jurisdiction and how to address the apparent mistake committed either by the trial court or the clerk of court. Ordinarily, and standing alone, the June 2, 2025 orders would constitute a final judgment appealable to this court. On their face, the orders resolve the guardianship petition in its entirety and leave nothing more to be done in the case. See *People v. Vara*, 2018 IL 121823, ¶ 13 (a final judgment determines the merits of the litigation such that the only thing remaining is to proceed with execution of the judgment). However, none of the parties nor the court itself treated the June 2, 2025 orders as final orders. Instead, those orders were disregarded completely as if no one knew they existed before and during the hearing that was held two days later on the guardianship petition. The parties and the court treated those orders as having no effect on the proceedings.

¶ 21    The court also entered a continuance order on June 2, 2025. That order creates an irreconcilable conflict in the court's orders following the parties' June 2, 2025 court appearance. The continuance order was setting the matter over for a hearing to be conducted two days later, and the parties were directed in that order to appear in person for the hearing.

¶ 22    The June 2, 2025 orders must be considered in their totality and in light of the oral pronouncements made by the court. See *People v. Vance*, 2024 IL App (1st) 232503, ¶ 29 (the trial court's oral ruling, if reduced to writing in a transcript of proceedings, should be considered along with the written order); *People v. Thurston*, 255 Ill. App. 3d 512, 514-15 (1994) (in ascertaining the terms of the sentence, a reviewing court may examine the record as a whole since the oral pronouncement of the sentence and the written sentencing order entered on the same date can be viewed as one transaction).

¶ 23    Article VI, section 6, of the Illinois Constitution confers on the appellate court jurisdiction to review final judgments entered by the circuit court. Ill. Const. 1970, art. VI, § 6;

*Vara*, 2018 IL 121823, ¶ 13. A final judgment "determines the litigation on the merits such that the only thing remaining is to proceed with execution of judgment." *Id*. (quoting *People v. Shinaul*, 2017 IL 120162, ¶ 10); see also *People v. Pawlaczyk*, 189 Ill. 2d 177, 186 (2000). The rendition of a judgment is a judicial act, performed by the court at the time it makes its pronouncement. *Id*. (citing *In re Estate of Young*, 414 Ill. 525, 533 (1953)).

¶ 24      Viewing the circuit court's action in light of the principles that make a judgment final and appealable, it is apparent that the June 2, 2025 orders did not constitute a final judgment. The June 2, 2025 orders did not determine the litigation on the merits, they left the proceedings with matters that required resolution. We can only speculate about the reason the orders were erroneously entered before the hearing, but there is no doubt that the court intended the case to continue to a hearing and did not intend to enter any final judgment on June 2, 2025. "[A] 'final judgment' is a determination by the circuit court on the issues presented by the pleadings 'which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit.' " *Shinaul*, 2017 IL 120162, ¶ 10 (quoting *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 47). Here, the issues were not decided and the parties' rights were not finally fixed until after the hearing.

¶ 25      The transcript of the June 2, 2025 court proceedings and the continuance order that was entered following the court appearance clearly indicate that unresolved matters were being held over to June 4, 2025 for a hearing before a final judgment would be rendered. When a trial court's oral pronouncement is in conflict with its written order, the oral pronouncement prevails. *In re Taylor B.*, 359 Ill. App. 3d 647, 651 (2005). Our supreme court has addressed the distinction between rendering a judgment and entering a judgment. See *Vara*, 2018 IL 121823, ¶ 17. Rendering a judgment is the judicial act of the court in pronouncing its ruling or finding in the controversy. *Id*. Entering a judgment is a ministerial act by clerk of court that preserves the

record of that decision. *Id*. ¶¶ 17, 25. On June 2, 2025, in this case, there was no judicial act pronouncing a ruling. Accordingly, the June 2, 2025 orders did not constitute a final judgment.

¶ 26     Because the June 2, 2025 orders were merely interlocutory, they were subject to modification at any time before a final judgment was rendered on the merits. The parties likewise treated the orders as having no effect and they all continued on to a hearing as if the orders did not exist. None of the parties would have the right to insist on treating the June 2, 2025 orders as final where they all acted inconsistently with such a position and continued on with the case as if it was still a fully live controversy.

¶ 27     Having found that the June 2, 2025 orders do not have any final legally preclusive effect, we turn to the trial court's June 4, 2025 disposition following the hearing. While our jurisdiction is not specifically challenged by the parties as it concerns the June 4, 2025 ruling, we have an independent duty to examine our jurisdiction. *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984). In carrying out our duty to examine our jurisdiction, we have observed that, following the June 4, 2025 hearing, the trial court never entered a final, binding, and appealable judgment to close the guardianship proceedings. As such, we lack jurisdiction to consider the merits of the appeal.

¶ 28     As with the premature entry of the guardianship orders, the record is unclear as to why the trial court never entered any written order following the hearing. Perhaps it was because the trial court believed the June 2, 2025 orders were sufficient to bring a close to the case, but, as set forth above, they were not. Instead, at the close of the hearing, the trial court made an oral pronouncement that the children's uncle was appointed as their guardian. The trial court indicated that it was "granting the guardianship motion." The trial court further informed Alex R. that he had 30 days to appeal the finding. The trial judge concluded the hearing by informing the

parties that "this is the end of the case" and "the case is closed." No written order followed nor was a notation of the hearing entered into the record. No letters of office were filed on June 4, 2025. There is no docket entry indicating an order was entered on the guardianship petitions on June 4, 2025. Alex R. filed his notice of appeal the same day as the trial court's oral ruling.

¶ 29     Supreme Court Rule 272 states that a judgment is not entered unless there is a written order or a notation made in the record.

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge or if a circuit court rule requires the prevailing party to submit a draft order, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record. Orders and judgments may be prepared, presented, and signed electronically, if permitted by the Supreme Court." Ill. S. Ct. R. 272 (eff. Jan. 1, 2018).

¶ 30     Procedurally, this case is in the same posture as the case *In re K.S.*, 250 Ill. App. 3d 862 (1993). In *In re K.S.*, we explained that if a notice of appeal is filed based on the circuit court's oral ruling before a written judgment is filed, the appeal is premature and we lack jurisdiction.

> "The notice of appeal was filed after the oral pronouncement of the judge's decision but prior to the entry of the written judgment. Oral pronouncements are not final, binding or appealable. The written judgment or the notation of record is the judgment of the court and not the oral pronouncement. The notice of appeal

was premature, and we must dismiss the appeal." *Id*. at 863 (internal citations omitted).

¶ 31    The same result obtained in *In re B.D.*, 212 Ill. App. 3d 251 (1991). In that case, the trial court held a hearing at which it determined that it was in the best interests of the minors that their parents' parental rights be terminated. *Id*. at 253. The trial court announced its ruling on the record. *Id*. The trial court instructed the Assistant State's Attorney to draft an order memorializing the court's ruling, and the court indicated it would sign the order. *Id*. For whatever reason, no written order was entered that day. The parents filed a notice of appeal two weeks later, but no written order had been filed at that time. *Id*. The notice of appeal indicated that the parents were appealing the ruling made following the hearing on the specific date the hearing occurred. *Id*.

¶ 32    We explained in *In re B.D.* that the appeal had to be dismissed because the notices of appeal were filed prematurely and did not confer jurisdiction on this court. *Id*. at 253-54. We observed that the parents' jurisdictional statement indicated that they were bringing the appeal pursuant to Illinois Supreme Court Rule 301, which allows appeals from final orders of the circuit court. *Id*. However, we explained that the parents' notices of appeal were filed before entry of the written judgments. *Id*. We noted that the trial judge made an oral announcement after the hearing indicating that he would enter judgment against the respondents, but the judge never in fact entered a formal written judgment. *Id*. Thus, dismissal of the appeal was proper. "A judgment becomes final only after the signed judgment is filed." Ill. S. Ct. R. 272 (eff. Jan. 1, 2018) (Committee Comment); see also *Williams v. BNSF Railway Co.*, 2015 IL 117444, ¶¶ 35-45; *Ahn Bros. v. Buttitta*, 143 Ill. App. 3d 688, 690 (1986).

¶ 33     The Office of the Public Guardian argues that the above cases requiring a written judgment before an appeal may be taken are distinguishable because they are procedurally different than this case. The Public Guardian argues that we should follow *In re Estate of Rice*, 130 Ill. App. 3d 416, 424 (1985) and find that jurisdiction may exist in this court even when no written order is entered by the circuit court. In *Rice*, however, the trial court specifically stated that the transcript of the proceedings was to stand as its order in the case. *Id*. The trial court in *Rice* explained on the record "its ongoing practice of having the transcript stand as its order" and the transcript order was filed with the clerk. *Id*. We noted that, "under the unique circumstances" where, in that case, "the trial court specifically stated that the transcript stood as its order," the notice of appeal was sufficient to invoke jurisdiction within 30 days after the transcript was filed. *Id*.

¶ 34     We find *Rice* distinguishable and find that it would be improper to apply it here. The trial court in this case did not indicate that the transcript would serve as its order in the case and the transcript was not filed with the clerk as if it were an order. Rather, the common law record in this case is completely devoid of any written order that could be found to constitute a pronouncement of a final judgment in the case. The Supreme Court Rules state that if no "signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record." Ill. S. Ct. R. 272 (eff. Jan 1., 2018). No such judgment exists in this case.

¶ 35     As in *In re K.S.* and *In re B.D.* and as contemplated by Supreme Court Rule 272, before a formal written judgment is entered, the trial court's decision cannot be appealed from, attacked by motion, or enforced. The notice of appeal in this case was premature and did not confer jurisdiction on this court. As such, we lack jurisdiction and therefore have no authority to reach

the merits of this appeal. When jurisdiction is found lacking, the reviewing court must dismiss the appeal. *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 22.

¶ 36 The Public Guardian urges us to utilize Illinois Supreme Court Rule 366 to determine that we have jurisdiction. In essence, the Public Guardian suggests that we correct or amend the trial court's orders either to conform the court's written orders to its oral pronouncements or direct the trial court to have the June 2, 2025 orders entered *nunc pro tunc* to June 4, 2025. While those courses of action might be appealing in terms of efficiency, especially due to the fact that the case involves the custody and care of three minor children, we reject the invitation to use the authority granted to us by the supreme court under that Rule to create appellate jurisdiction where it otherwise does not exist.

¶ 37 As it is relevant here, Supreme Court Rule 366 provides that, "[i]n all appeals the reviewing court may, in its discretion, and on such terms as it deems just, (1) exercise all or any of the powers of amendment of the trial court ***and (5) enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." Ill. S. Ct. R. 366 (a)(1), (a)(5) (eff. Feb. 1, 1994). The Public Guardian suggests that a dissenting opinion in *People v. Vara*, 2018 IL 121823 provides a path for us to reach the merits of the appeal. In a dissent in *Vara*, Justice Thomas stated that courts have inherent authority to correct mistakes of the circuit clerk. *Vara*, 2018 IL 121823, ¶¶ 83-86 (Thomas, J., dissenting).

¶ 38 However, in this case, it is not abundantly clear that the error was that of the circuit clerk. After all, the orders that were entered contain the trial judge's signature and contain specific legal reasons and conclusions. We do not know if the orders were misdated or otherwise entered as a result of a clerical error or a judicial error. While Supreme Court Rule 366 gives broad

authority to the reviewing court, it does not give this court supervisory authority, authority to exercise mandamus jurisdiction, nor does it permit us to overlook the fundamental precept of appellate jurisdiction. We think it would be inappropriate for us to use Rule 366 to take orders that were entered before a hearing and then amend the date so that the orders can be used to constitute the hearing's dispositional order, especially here where such an amendment would have the effect of vesting us with jurisdiction that we otherwise lack.

¶ 39                                          CONCLUSION

¶ 40    For the foregoing reasons, we lack jurisdiction and the appeal must be dismissed.

¶ 41    Appeal dismissed.